**MID ATLANTIC MEDICAL
SERVICES, INC.,
Plaintiff**

v.

**Joel SEREBOFF and Marlene
Sereboff, Defendants**

**No. CIV. AMD 03–2269.**

United States District Court,
D. Maryland.

Jan. 26, 2004.

Michelle Ericka Stawinski, Bouland and Brush LLC, Baltimore, MD, Thomas H. Lawrence, Holly J. Schimmel, Lawrence & Russell, LLP, Memphis, TN, for Plaintiff.

Martin Eugene Wolf, Quinn Gordon and Wolf Chtd., Towson, MD, John Charles

Stein, The Boccardo Law Firm LLP, San Jose, CA, for Defendants.

## MEMORANDUM OPINION

DAVIS, District Judge.

Defendants Joel and Marlene Sereboff, residents of Maryland, were injured in a motor vehicle accident while visiting California. In consequence of their injuries, the ERISA-covered health insurance plan of which they were participants through Mrs. Sereboff's employer provided benefits in the amount of $74,869.37. In due course, the Sereboffs successfully prosecuted a civil action in California state court against the parties responsible for their injuries. Ultimately, they settled their claims for $750,000. Thereafter, upon the refusal by the Sereboffs to pay over a portion of their recovery to the health insurance plan in reimbursement for the benefits that had been provided, plaintiff Mid Atlantic Medical Services, Inc., the plan fiduciary, instituted this action against them pursuant to § 502(a)(3) the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(3).* Now pending are (1) the motion to dismiss for failure to state a claim filed by defendants and (2) the motion for summary judgment filed by plaintiff. The issues have been fully briefed and no hearing is necessary. For the reasons stated below, the motion to dismiss shall be denied and the motion for summary judgment shall be granted in part and denied in part.

## I.

The applicable standard for the review of a motion to dismiss for failure to state a

claim under Fed.R.Civ.P. 12(b)(6) is well settled:

> A Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rather, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

*Migdal v. Rowe Price–Fleming Int'l, Inc.*, 248 F.3d 321, 325–26 (4th Cir.2001).

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248, 106 S.Ct. 2505. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

---

* Plaintiff's verified complaint joined the Sereboffs' California attorney and his law firm (who were named in a separate count for interference with contractual relations) as well as the Sereboffs themselves (and indeed, plaintiff sought a temporary restraining order) because there was uncertainty as to how the settlement proceeds might be handled and the timing of any disbursements. Defendants other than the Sereboffs have been dismissed and the sole claim pending at this time is plaintiff's claim for reimbursement under ERISA.

proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991). Of course, the facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court, however, has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *See Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987).

## II.

Helpfully, the parties have entered into a comprehensive stipulation of undisputed facts which, without the exhibits thereto, is attached to this Memorandum Opinion and is incorporated by reference herein.

At bottom, the dispute between the parties is narrow and highly focused, and may be set forth succinctly. In *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213–14, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), the Supreme Court affirmed a judgment of the Ninth Circuit that an ERISA fiduciary could not recover reimbursement in federal court against a beneficiary (who, like the Sereboffs, had suffered injuries in a motor vehicle accident) under ERISA § 502(a)(3) because the relief the fiduciary sought was not "other appropriate equitable relief" within the contemplation of § 502(a)(3). The Court held on the facts presented that the ostensible claim for "restitution" sought by the ERISA fiduciary was actually a claim for compensatory damages relief. *See id.* at 213, 122 S.Ct. 708 ("[N]ot all relief falling under the rubric of restitution is available in equity.").

In announcing its holding, *Knudson* provided some critical *obiter dicta* in delineating the circumstances under which an ERISA fiduciary's claim falls on the "equity" or "law" side of the often fuzzy line separating the two forms of monetary relief encompassed by the term restitution:

In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity. See, *e.g.,* 1 Dobbs §§ 1.2, at 11; *id.,* §§ 4.1(1), at 556; *id.,* §§ 4.1(3), at 564–565; *id.,* §§§§ 4.2–4.3, at 570–624; 5 Corbin §§ 1102, at 550; Muir, ERISA Remedies: Chimera or Congressional Compromise?, 81 Iowa L.Rev. 1, 36–37 (1995); Redish, Seventh Amendment Right to Jury Trial: A Study in the Irrationality of Rational Decision Making, 70 Nw. U.L.Rev. 486, 528 (1975). Thus, "restitution is a legal remedy when ordered in a case at law and an equitable remedy ... when ordered in an equity case," and whether it is legal or equitable depends on "the basis for [the plaintiff's] claim" and the nature of the underlying remedies sought. *Reich v. Continental Casualty Co.,* 33 F.3d 754, 756 (C.A.7 1994) (Posner, J.).

In cases in which the plaintiff "could *not* assert title or right to possession of particular property, but in which never-

theless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit. 1 Dobbs §§ 4.2(1), at 571. See also Muir, *supra,* at 37. In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." Restatement of Restitution §§ 160, Comment *a,* pp. 641–642 (1936). Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

In contrast, a plaintiff could seek restitution *in equity,* ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. See 1 Dobbs §§ 4.3(1), at 587–588; Restatement of Restitution, *supra,* §§ 160, Comment *a,* at 641–642; 1 G. Palmer, Law of Restitution §§ 1.4, p. 17; §§ 3.7, p. 262 (1978). A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Restatement of Restitution, *supra,* §§ 215, Comment *a,* at 867. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 213–15.

■ Virtually every federal court that has been called upon to apply the Supreme Court's decision in *Knudson* has recognized the import of the Court's *dicta* and has held that where funds in the actual or constructive possession of a plan beneficiary are traceable to "money or property identified as belonging in good conscience to [the ERISA plan]," *id.* at 214, 122 S.Ct. 708, the ERISA fiduciary may bring its claim for reimbursement in federal court under § 502(a)(3), as a claim for "other appropriate equitable relief." *See, e.g., Primax Recoveries, Inc. v. Young,* 83 Fed. Appx. 523, 2003 WL 22973630 (4th Cir. 2003) (citing with approval *Bauhaus USA, Inc. v. Copeland,* 292 F.3d 439, 445 (5th Cir.2002)); *Bombardier Aerospace Employee Welfare Benefits Plan,* 354 F.3d 348, 356 (5th Cir.2003)(formulating the following three-part test for cognizable actions under § 503(a)(3): "Does the Plan seek to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the Plan, and (3) that are within the possession and control of the defendant beneficiary?"). Against the weight of authority on these issues, it appears, as the Sereboffs note, the Ninth Circuit seems to have ignored the Supreme Court's *dicta,* as it continues to declare, even after *Knudson,* and seemingly without qualification, that reimbursement claims by ERISA fiduciaries are legal claims for compensatory damages seeking to impose personal liability. *See Westaff (USA) v. Arce,* 298 F.3d 1164, 1167 (9th Cir.2002) (reasoning that even though funds recovered by the insured are in the insured's possession (escrow account) and identifiable, an action to determine the rights of the insurer under the plan's sub-

rogation clause is a request for legal relief and not authorized by § 502(a)(3)), *cert. denied,* 537 U.S. 1111, 123 S.Ct. 901, 154 L.Ed.2d 784 (2003). The Sereboffs invite me to apply the Ninth Circuit's approach in this case, either because it is a sounder approach as a matter of policy or because the accident out of which plaintiff's claim arises occurred in that circuit. I decline this invitation and adhere to the approach followed by the courts that have given precedential effect to the Supreme Court's *dicta* in *Knudson.*

■■ Manifestly, in the case at bar, plaintiff (an ERISA fiduciary) seeks to recover funds that (1) are "specifically identifiable" (because they were paid to the Sereboffs and their attorney on behalf of the tortfeasors causing their injuries, and the specific portion claimed by plaintiff has been separated from the balance of those funds); (2) "belong in good conscience to the Plan" (because the plain language of the plan indisputably requires reimbursement under the circumstances of the Sereboffs' tort claims arising out of the California accident); and (3) "are within the possession and control of the defendant beneficiary" (because the Sereboffs and their attorney received the funds in hand and the Sereboffs have segregated the claimed monies in an investment account to abide the result of this lawsuit). Accordingly, defendants' motion to dismiss shall be denied because the verified complaint adequately puts defendants on notice of the nature and character of plaintiff's claim and indeed, plainly states a claim under ERISA as elucidated in *Knudson.* Furthermore, defendants having failed to generate a genuine dispute of material fact as to any element of plaintiff's claim, and because plaintiff is entitled to judgment as a matter of law, plaintiff's motion for summary judgment shall be granted, but only in part.

■ Plaintiff's motion for summary judgment shall be granted only *in part* because I am constrained to reject plaintiff's attempt to avoid a *deduction* from its claimed amount for reimbursement to account for its *pro rata* share of (the Sereboffs') attorney's fees and costs that were incurred to achieve success in prosecuting their state court damages action. It is undisputed that such a deduction is provided for under the plain terms of the plan. Plaintiff contends that because the Sereboffs (admittedly on the advice of their California counsel, who understandably is enamored of the Ninth Circuit approach to reimbursement claims by ERISA fiduciaries), have disputed plaintiff's entitlement to reimbursement, required that plaintiff file this case. This is scant reason to ignore the plain terms of the plan and I decline to do so. On the other hand, ERISA provides that a " 'court in its discretion may allow a reasonable attorney's fee and costs of action to either party.' 29 U.S.C. §§ 1132(g)(1)." *Johannssen v. District No. 1—Pacific Coast District, MEBA Pension Plan,* 292 F.3d 159, 168–69 (4th Cir.2002). Thus, plaintiff is free to file an application for attorney's fees pursuant to ERISA in accordance with Local Rule 109.2. *See also* Fed.R.Civ.P.54(d)(2)(A), (B).

### III.

For the reasons set forth, the motion to dismiss shall be denied and the motion for summary judgment shall be granted in part and denied in part. An order follows. If plaintiff files a motion for attorney's fees as the prevailing party in this action, briefing on such motion shall proceed in the normal course.

ATTACHMENT TO COURTS OPINION

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND BALTIMORE DIVISION

MID ATLANTIC MEDICAL
SERVICES, INC.,
Plaintiff,

vs.

JOEL SEREBOFF and MARLENE
SEREBOFF, Defendants.

No. 1:03–cv–02269–AMD.

### JOINT STIPULATION OF FACTS

1. Mid Atlantic Medical Services, Inc. ("MAMSI") is a fiduciary of the MAMSI Life and Health Insurance PPO Plan (the "Plan"), which is sponsored by Katzen Eye Group.

2. Defendant, Dr. Joel Sereboff, is a licensed psychologist residing in Owings Mills, Maryland and has been a practicing psychologist for 30 years.

3. Defendant, Marlene Sereboff, resides in Owings Mills, Maryland and is a registered nurse. She has worked at Katzen Eye Group for 20 years as a nurse and has been married to Dr. Joel Sereboff for 30 years.

4. On June 22, 2000, Joel and Marlene Sereboff were visiting California and were in the process of returning a vehicle to the Hertz–Rent–A–Car lot at San Jose International Airport when they were struck by a vehicle driven by Mr. Roederer, an employee of Lancaster Colony Corporation, in the course and scope of his employment.

5. The minor collision between the two vehicles caused the Sereboff's vehicle to be pushed into a K–Rail (a New Jersey turnpike barrier) with an exposed blunt concrete end. The design of this rental car facility greatly aggravated Sereboffs' injuries.

6. The owner of the property, City of San Jose, entered into a lease with a consortium of rental car companies who represented the entire spectrum of the rental car industry in America. The consortium retained an architect to design the rental facility. All of these defendants were joined in the litigation. The initial Complaint was filed on August 11, 2000 and was amended to include the City of San Jose, the architect, the builders, and the rental car consortium.

7. After the events of the September 11, 2001 attack, a number of these rental car companies (Budget, National, Alamo) went into bankruptcy and the litigation was stayed on three occasions to exclude them from further participation in the litigation, but allowing the Sereboffs to go forward against the remaining defendants.

8. Joel Sereboff and Marlene Sereboff, for all times relevant to this action, were members of the Plan for the purposes of obtaining medical, surgical and hospital benefits.

9. The Plan is covered by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et. seq.* The Plan is a self-funded employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).

10. In connection with the injuries suffered by Defendant Marlene Sereboff, the Plan paid medical benefits on her behalf in the amount of $73,778.26. In connection with the injuries suffered by Defendant Joel Sereboff, the Plan paid medical benefits on his behalf in the amount of $1,091.11.

11. The Plan contains an acts of third parties provision, which states:

**ACTS OF THIRD PARTIES**

This subrogation provision applies when you are sick or injured as a result of the

act or omission of another person or party. Subrogation means the Company's right to recover any payments made to you or your dependent by a third party or any insurer acting in place of, or on behalf of a third party or a third party's insurer, because of an injury or illness caused by a third party. Third party means another person or organization.

If you or your dependent receives benefits and have a right to recover damages from a third party, the Company is subrogated to this right. All recoveries from a third party (whether by lawsuit, settlement, or otherwise) must be used to reimburse the Company net of reasonable attorney fees and court costs prorated to reflect that portion of the total recovery which is due the Company for benefits paid. Any remainder will be yours or your dependents. The Company's share of the recovery will not be reduced because you or your dependent has not received the full damages claimed, unless the Company agrees in writing to a reduction.

You must promptly advise the Company whenever a claim is made against a third party with respect to any loss for which the Company benefits have been or will be paid. You or your dependent must execute any assignments, liens or other documents and provide information as the Company requests. MLH's benefits may be withheld until documents or information are received. If you need more information about subrogation, the Company will provide you with its subrogation procedures.

A true and correct copy of the Plan provision is attached hereto as Exhibit 1.

12. On August 11, 2000, John Stein ("Stein"), the Sereboff's attorney, filed a personal injury action in the Santa Clara County Superior Court on behalf of the Sereboffs in an action styled *Joel Sereboff and Marlene Sereboff v. Lancaster Colony Corporation, a corporation, Budget Rent–A–Car Corporation, a corporation, Team Fleet Financing Corporation, a corporation, Charles E. Roederer and Does 1 to 50,* case number CV791810. A true and correct copy of the referenced complaint is attached hereto as Exhibit 2.

13. In a separate correspondence dated October 18, 2000, from MAMSI to Stein, one letter regarding Marlene Sereboff and the other letter regarding Joel Sereboff, MAMSI informed Stein that it had reimbursement interest in proceeds the Sereboffs may recover relating to their injuries pursuant to the Evidence of Coverage and offered Stein an opportunity to assert MAMSI's subrogation lien. A true and correct copy of the October 18, 2000, correspondence is attached hereto as collective Exhibit 3.

14. In correspondence dated October 18, 2000, from MAMSI to Marlene Sereboff, MAMSI informed her that it had paid $67,670.65 in medical claims on behalf of her and that, pursuant to the Evidence of Coverage, MAMSI has a right to reimbursement and, as such, requested that she sign an agreement acknowledging that she will abide by the terms within the Evidence of Coverage. Marlene Sereboff did not sign and return the agreement to MAMSI. A true and correct copy of the October 18, 2000, correspondence is attached hereto as Exhibit 4.

15. In correspondence dated October 18, 2000, from MAMSI to Marlene Sereboff regarding Joel Sereboff, MAMSI informed her that it had paid $5,797.60 in medical claims on behalf of Joel and that, pursuant to the Evidence of Coverage, MAMSI has reimbursement rights and, as such, requested that he sign an agreement

acknowledging that she will abide by the terms within the Evidence of Coverage. (Marlene Sereboff did not sign and return the agreement to MAMSI). A true and correct copy of the October 18, 2000, correspondence is attached hereto as Exhibit 5.

16. In correspondence dated December 6, 2000, from MAMSI to Stein, MAMSI again gave Stein notice of its subrogation lien for medical expenses paid on behalf of Marlene Sereboff and again offered Stein an opportunity to assert MAMSI's subrogation lien. A true and correct copy of the December 6, 2000, correspondence is attached hereto as Exhibit 6.

17. In correspondence dated December 6, 2000, from MAMSI to Stein, MAMSI gave Stein notice that its subrogation lien had increased to $70,180.46. A true and correct copy of the December 6, 2000, correspondence is attached hereto as Exhibit 7.

18. In correspondence dated December 6, 2000, from MAMSI to Marlene Sereboff, MAMSI informed her that she must reimburse the Plan upon recovery in relation to her injuries and requested that she sign an agreement acknowledging her obligation to reimburse MAMSI. A true and correct copy of the December 6, 2000, correspondence is attached hereto as Exhibit 8.

19. In correspondence dated December 6, 2000, sent via facsimile from MAMSI to Stein, MAMSI requested that Stein sign a lien agreement. Stein did not sign and return the lien agreement to MAMSI. A true and correct copy of the December 6, 2000, correspondence is attached hereto as Exhibit 9.

20. In correspondence dated April 13, 2001, from MAMSI to Stein regarding Marlene Sereboff, MAMSI informed Stein that the current amount of its lien was $72,317.35. A true and correct copy of the April 13, 2001, correspondence is attached hereto as Exhibit 10.

21. In separate correspondence dated April 13, 2001, from MAMSI to Stein and Marlene Sereboff, MAMSI made a formal demand requesting that Marlene Sereboff cooperate with MAMSI to enforce its rights under the Evidence of Coverage and sign a lien acknowledgement form. A true and correct copy of the April 13, 2001, correspondence is attached hereto as Exhibit 11.

22. In correspondence dated April 24, 2001, from Stein to MAMSI, Stein informed MAMSI that he did not believe that it was entitled to reimbursement, citing four Ninth Circuit Court opinions holding that subrogation liens are not collectable. A true and correct copy of the April 24, 2001, correspondence is attached hereto as Exhibit 12.

23. In correspondence dated May 7, 2001, from MAMSI to Stein, MAMSI gave notice of its reimbursement right and subrogation lien for medical claims paid on behalf of Joel Sereboff and offered Stein an opportunity to assert MAMSI's subrogation lien. A true and correct copy of the May 7, 2001, correspondence is attached hereto as Exhibit 13.

24. In correspondence dated May 7, 2001, from MAMSI to Stein, MAMSI requested that Stein complete and return an accident information form. A true and correct copy of the May 7, 2001, correspondence is attached hereto as Exhibit 14.

25. In correspondence dated May 7, 2001 from MAMSI to Marlene Sereboff, MAMSI informed her that she must reimburse MAMSI upon recovery from the parties responsible for Joel Sereboff's injuries and again requested that she sign and return an agreement acknowledging her

obligation to reimburse MAMSI. A true and correct copy of the May 7, 2001, correspondence is attached hereto as Exhibit 15.

26. In correspondence dated May 23, 2001, MAMSI responded to Stein's April 24, 2001, correspondence. MAMSI denied it was an ERISA Plan and reasserted MAMSI's request for a signed lien agreement. MAMSI asserted that the Health Plan was a Maryland contract and that California law did not apply. A true and correct copy of the May 23, 2001, correspondence is attached hereto as Exhibit 16.

27. In correspondence dated May 30, 2001, from Stein to MAMSI, Stein advised MAMSI to retain a California attorney to protect MAMSI's reimbursement interest in the litigation pending in California because he did not believe he could represent both interests. Stein told MAMSI they should negotiate separately for reimbursement of all monies owned MAMSI. A true and correct copy of the May 30, 2001, correspondence is attached hereto as Exhibit 17.

28. In correspondence dated June 7, 2001, from Stein to MAMSI, Stein enclosed a copy of the state court complaint he filed on behalf of the Sereboffs. A true and correct copy of the June 7, 2001, correspondence is attached hereto as Exhibit 18.

29. In correspondence dated June 28, 2001 from Stein to MAMSI, Stein informed MAMSI that his position regarding its reimbursement and lien claims against proceeds recovered by Joel Sereboff was the same as his position with regard to MAMSI's reimbursement and lien claims against proceeds recovered by Marlene Sereboff. A true and correct copy of the June 28, 2001, correspondence is attached hereto as Exhibit 19.

30. In correspondence dated October 17, 2001, and December 17, 2001, from MAMSI to Stein, MAMSI informed Stein that its lien was $72,929.86 for the medical claims paid on behalf of Marlene Sereboff and requested that Stein remit a check to MAMSI in the amount of the lien at the time the Sereboffs settled their pending personal injury action. A true and correct copy of the October 17, 2001, and December 17, 2001, correspondence is attached hereto as collective Exhibit 20.

31. In correspondence dated February 22, 2002, from MAMSI to Stein regarding Joel Sereboff, MAMSI informed Stein that the current subrogation lien amount was $1,091.11. A true and correct copy of the February 22, 2002, correspondence is attached hereto as Exhibit 21.

32. In correspondence dated April 25, 2002, June 25, 2002, August 22, 2002, and March 12, 2003, from MAMSI to Stein regarding Marlene Sereboff, MAMSI informed Stein that its subrogation lien was $73,778.26 and requested that Stein reimburse MAMSI in the amount of the lien at the time of settlement. A true and correct copy of the April 25, 2002, June 25, 2002, August 22, 2002, and March 12, 2003, correspondence is attached hereto as collective Exhibit 22.

33. In correspondence dated May 24, 2002, August 22, 2002, and March 12, 2003, from MAMSI to Stein regarding Joel Sereboff, MAMSI informed Stein that the amount of its lien was $1,091.11 and requested that Stein make a check payable to MAMSI in the amount of the lien upon the case settling. A true and correct copy of the May 24, 2002, August 22, 2002, and March 12, 2003, correspondence is attached hereto as collective Exhibit 23.

34. On January 23, 2003, the case settled as to all parties in favor of the Sereboffs' claims. All defendants paid

$750,000. Notice to the Court is attached hereto as Exhibit 27.

35. In correspondence dated March 12, 2003, from MAMSI to Joel Sereboff, MAMSI informed Joel Sereboff that the amount of MAMSI's lien was $1,091.11 and requested that he issue a check to MAMSI in the amount of its lien upon the case settling. A true and correct copy of the March 12, 2003, correspondence is attached hereto as Exhibit 24.

36. In correspondence dated March 12, 2003, from MAMSI to Marlene Sereboff, MAMSI informed her that the amount of MAMSI's lien was $73,778.26 and requested that she issue a check to MAMSI in the amount of its lien upon the case settling. A true and correct copy of the March 12, 2003, correspondence is attached hereto as Exhibit 25.

37. The Sereboffs did not reimburse MAMSI in the amount of its lien following their settlement or notify MAMSI of their settlement.

38. In correspondence dated March 20, 2003, from Stein to MAMSI, replying to MAMSI's March 12, 2003 correspondence, Stein reiterated his opinion that the liens were not collectable, citing *Great–West Life & Annuity Insurance Company v. Janette Knudson* and *Westaff (USA) Inc. v. Betty Arce*. A true and correct copy of the March 20, 2003, correspondence is attached hereto as Exhibit 26.

## DECLARATORY JUDGMENT and ORDER

In accordance with the foregoing Memorandum Opinion, it is this 26th day of January, 2004, by the United States District Court for the District of Maryland, ORDERED, ADJUDGED, and DECREED

(1) That the defendants' motion to dismiss is DENIED; and it is further ORDERED

(2) That the plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART; and it is further ORDERED

(3) That ON OR BEFORE FEBRUARY 9, 2004, DEFENDANTS JOEL SEREBOFF and MARLENE SEREBOFF SHALL PAY OVER TO PLAINTIFF OR ITS DESIGNEE THE PRINCIPAL SUM OF $74,869.37, TOGETHER WITH INTEREST AT THE LEGAL RATE OF SIX PERCENT PER ANNUM DATING FROM MARCH 12, 2003, PROVIDED THAT SUCH PAYMENT SHALL BE REDUCED BY THE AMOUNT CALCULATED PURSUANT TO PARAGRAPH (4) BELOW; and it is further ORDERED

(4) That IN ACCORDANCE WITH THE TERMS OF THE MAMSI LIFE AND HEALTH INSURANCE PPO, THE AMOUNT PAYABLE BY DEFENDANTS TO PLAINTIFF SHALL BE REDUCED BY PLAINTIFF'S *PRO RATA* SHARE OF "REASONABLE ATTORNEY FEES AND COURT COSTS," THE TOTAL AMOUNT OF WHICH THE COURT FINDS AS A MATTER OF LAW TO BE

(a) $26, 123.15 (COSTS AND LITIGATION EXPENSES) and

(b) A REASONABLE ATTORNEY FEE OF TWENTY–FIVE PERCENT (25%) OF THE TOTAL RECOVERY ($750,000) PAID TO AND ON BEHALF OF JOEL SEREBOFF and MARLENE SEREBOFF IN RESPECT OF THEIR INJURIES AND LOSSES IN THE UNDERLYING STATE COURT CLAIM; and it is further ORDERED

(5) That THIS ORDER IS ENTERED WITHOUT PREJUDICE TO PLAIN-

TIFF'S RIGHT TO SEEK AN AWARD OF ATTORNEY'S FEES AND COSTS AS PREVAILING PARTY IN THIS ACTION; and it is further ORDERED

(6) Any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58.