(Slip Opinion) OCTOBER TERM, 2005 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SEREBOFF ET UX. *v.* MID ATLANTIC MEDICAL SERVICES, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 05–260.   Argued March 28, 2006—Decided May 15, 2006

Petitioner Sereboffs are beneficiaries under a health insurance plan administered by respondent Mid Atlantic and covered by the Employee Retirement Income Security Act of 1974 (ERISA). The plan provides for payment of covered medical expenses and has an "Acts of Third Parties" provision. This provision requires a beneficiary who is injured as a result of an act or omission of a third party to reimburse Mid Atlantic for benefits it pays on account of those injuries, if the beneficiary recovers for those injuries from the third party. The Sereboffs were involved in an automobile accident and suffered injuries. The plan paid the couple's medical expenses. The Sereboffs sought compensatory damages for the accident from third parties in state court. After the Sereboffs settled their tort suit, Mid Atlantic filed suit in District Court under §502(a)(3) of ERISA, seeking to collect from the Sereboffs' tort recovery the medical expenses it had paid on the Sereboffs' behalf. The Sereboffs agreed to set aside from their tort recovery a sum equal to the amount Mid Atlantic claimed, and preserve this sum in an investment account pending the outcome of the suit. The court found in Mid Atlantic's favor and ordered the Sereboffs to turn over the amount set aside. The Fourth Circuit affirmed in relevant part, and observed that the Courts of Appeals are divided on the question whether §502(a)(3) authorizes recovery in these circumstances. This Court granted review to resolve this disagreement.

*Held:* Mid Atlantic's action properly sought "equitable relief" under §502(a)(3). Pp. 3–11.

   (a) A fiduciary may bring a civil action under §502(a)(3)(B) "to obtain . . . appropriate equitable relief . . . to enforce . . . the terms of the

plan." The only question here is whether the relief requested was "equitable." In *Mertens* v. *Hewitt Associates,* 508 U. S. 248, this Court construed §502(a)(3)(B) to authorize only "those categories of relief that were *typically* available in equity," and thus rejected a claim that this Court found sought "nothing other than compensatory *damages*." *Id.,* at 207–208. This Court elaborated on this construction of §502(a)(3) in *Great-West Life & Annuity Ins. Co.* v. *Knudson,* 534 U. S. 204, which involved a provision in an ERISA plan similar to the "Acts of Third Parties" provision in the Sereboffs' plan. Relying on such a provision, Great-West sought equitable restitution of benefits it had paid when Knudson recovered in tort from a third party. In considering whether §502(a)(3)(b) authorized such relief, this Court asked whether the restitutionary remedy Great-West sought would have been equitable in "the days of the divided bench," *id.,* at 212. This Court found that it would not have been equitable, because the funds Great-West sought were not in Knudson's possession but had been placed in a trust under California law. That impediment is not present here. Mid Atlantic sought identifiable funds within the Sereboffs' possession and control—that part of the tort settlement due Mid Atlantic under the ERISA plan and set aside in the investment account. Pp. 3–5.

(b) This Court's case law from the days of the divided bench confirms that Mid Atlantic's claim is equitable. In *Barnes* v. *Alexander,* 232 U. S. 117, attorney Barnes promised two other attorneys "one-third of the contingent fee" he expected in a case, *id.,* at 119. Based on "the familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing," *id.,* at 121, the Court found that Barnes' undertaking "create[d] a lien" upon the portion of the recovery due him from the client, *ibid.,* which the other attorneys could "follow . . . into [Barnes'] hands" "as soon as [the fund] was identified," *id.,* at 123. The "Acts of Third Parties" provision in the Sereboffs' plan, like Barnes' promise, specifically identified a particular fund distinct from the Sereboffs' general assets, and a particular share of that fund to which Mid Atlantic was entitled. Thus, Mid Atlantic could rely on a "familiar rul[e] of equity" to collect for the medical bills it had paid by following a portion of the recovery "into the [Sereboffs'] hands" "as soon as [the settlement fund] was identified," and imposing on that portion a constructive trust or equitable lien. *Ibid.*

The Sereboffs object that Mid Atlantic's suit would not have satisfied the strict tracing rules that they say accompanied equitable restitution at common law. But *Barnes* confirms that no such tracing requirement applies to equitable liens imposed by agreement or as-

signment, like that in *Barnes* itself. And *Knudson* did not endorse application of all restitutionary conditions, like the tracing rules the Sereboffs identify, to every action for an equitable lien under §502(a)(3). *Knudson* simply held that equitable restitution was unavailable because the funds Great-West sought were not in Knudson's possession.

The Sereboffs also argue that equitable relief is inappropriate, even under *Barnes*, because at the time they agreed to the plan terms, no fund existed in which they could grant Mid Atlantic an equitable interest. But *Barnes* explicitly disapproved of a rule requiring identification at the time a contract is made of the fund to which a lien specified in the contract attached.

The Sereboffs also claim that the rule announced in *Barnes* applies only to equitable liens claimed under an attorney's contingency fee arrangement. But *Barnes* did not attach any particular significance to the identify of the parties seeking recovery, and other cases of this Court, not involving attorneys' contingency fees, have applied the same "familiar rul[e] of equity" that *Barnes* did. See, *e.g., Walker* v. *Brown,* 165 U. S. 654. Pp. 5–10.

　(c) The Sereboffs' contention that the lower courts erred in allowing enforcement of the "Acts of Third Parties" provision, without imposing limitations that would apply to an equitable subrogation action, is rejected. Mid Atlantic's claim is not considered equitable because it is a subrogation claim. Rather, it is considered equitable because it is indistinguishable from an action to enforce an equitable lien established by agreement, of the sort epitomized by *Barnes.* Pp. 10–11.

407 F. 3d 212, affirmed in relevant part.

　ROBERTS, C. J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 05–260

———————

## JOEL SEREBOFF, ET UX., PETITIONERS v. MID ATLANTIC MEDICAL SERVICES, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[May 15, 2006]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

In this case we consider again the circumstances in which a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) may sue a beneficiary for reimbursement of medical expenses paid by the ERISA plan, when the beneficiary has recovered for its injuries from a third party.

I

Marlene Sereboff's employer sponsors a health insurance plan administered by respondent Mid Atlantic Medical Services, Inc., and covered by ERISA, 88 Stat. 829, as amended, 29 U. S. C. §1001 *et seq.* (2000 ed. and Supp. III). Marlene Sereboff and her husband Joel are beneficiaries under the plan. The plan provides for payment of certain covered medical expenses and contains an "Acts of Third Parties" provision. This provision "applies when [a beneficiary is] sick or injured as a result of the act or omission of another person or party," and requires a beneficiary who "receives benefits" under the plan for such injuries to "reimburse [Mid Atlantic]" for those benefits

from "[a]ll recoveries from a third party (whether by law-suit, settlement, or otherwise)."  App. to Pet. for Cert. 38a.  The provision states that "[Mid Atlantic's] share of the recovery will not be reduced because [the beneficiary] has not received the full damages claimed, unless [Mid Atlantic] agrees in writing to a reduction." *Ibid.*

The Sereboffs were involved in an automobile accident in California and suffered injuries.  Pursuant to the plan's coverage provisions, the plan paid the couple's medical expenses.  The Sereboffs filed a tort action in state court against several third parties, seeking compensatory damages for injuries suffered as a result of the accident.  Soon after the suit was commenced, Mid Atlantic sent the Sereboffs' attorney a letter asserting a lien on the anticipated proceeds from the suit, for the medical expenses Mid Atlantic paid on the Sereboffs' behalf.  App. 87–90.  On several occasions over the next 2½ years, Mid Atlantic sent similar correspondence to the attorney and to the Sereboffs, repeating its claim to a lien on a portion of the Sereboffs' recovery, and detailing the medical expenses as they accrued and were paid by the plan.

The Sereboffs' tort suit eventually settled for $750,000.  Neither the Sereboffs nor their attorney sent any money to Mid Atlantic in satisfaction of its claimed lien which, after Mid Atlantic completed its payments on the Sereboffs' behalf, totaled $74,869.37.

Mid Atlantic filed suit in District Court under §502(a)(3) of ERISA, 29 U. S. C. §1132(a)(3), seeking to collect from the Sereboffs the medical expenses it had paid on their behalf.  Since the Sereboffs' attorney had already distributed the settlement proceeds to them, Mid Atlantic sought a temporary restraining order and preliminary injunction requiring the couple to retain and set aside at least $74,869.37 from the proceeds.  The District Court approved a stipulation by the parties, under which the Sereboffs agreed to "preserve $74,869.37 of the settlement

funds" in an investment account, "until the [District] Court rules on the merits of this case and all appeals, if any, are exhausted." App. 69.

On the merits, the District Court found in Mid Atlantic's favor and ordered the Sereboffs to pay Mid Atlantic the $74,869.37, plus interest, with a deduction for Mid Atlantic's share of the attorney's fees and court costs the Sereboffs had incurred in state court. See 303 F. Supp. 2d 691, 316 F. Supp. 2d 265 (Md. 2004). The Sereboffs appealed and the Fourth Circuit affirmed in relevant part. 407 F. 3d 212 (2005). The Fourth Circuit observed that the Courts of Appeal are divided on the question whether §502(a)(3) authorizes recovery in these circumstances. See *id.,* at 219–220, n. 7.[1] We granted certiorari to resolve the disagreement. 546 U. S. \_\_\_ (2005).

## II

### A

A fiduciary may bring a civil action under §502(a)(3) of ERISA "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U. S. C. §1132(a)(3). There is no dispute that Mid Atlantic is a fiduciary under ERISA and that its suit in District Court was to "enforce . . . the terms of" the "Acts of Third Parties" provision in the Sereboffs' plan. The only question is whether the relief Mid Atlantic requested from the Dis-

_____

[1] Compare *Administrative Comm. of Wal-Mart Assoc. Health & Welfare Plan* v. *Willard*, 393 F. 3d 1119 (CA10 2004), *Bombardier Aerospace Employee Welfare Benefits Plan* v. *Ferrer, Poirot & Wansbrough*, 354 F. 3d 348 (CA5 2003), and *Administrative Comm. of Wal-Mart Stores, Inc.* v. *Varco*, 338 F. 3d 680 (CA7 2003), with *Qualchoice, Inc.* v. *Rowland*, 367 F. 3d 638 (CA6 2004), and *Westaff (USA) Inc.* v. *Arce*, 298 F. 3d 1164 (CA9 2002).

trict Court was "equitable" under §502(a)(3)(B).

This is not the first time we have had occasion to clarify the scope of the remedial power conferred on district courts by §502(a)(3)(B). In *Mertens* v. *Hewitt Associates,* 508 U. S. 248 (1993), we construed the provision to authorize only "those categories of relief that were *typically* available in equity," and thus rejected a claim that we found sought "nothing other than compensatory *damages*." *Id.,* at 255–256. We elaborated on this construction of §502(a)(3)(B) in *Great-West Life & Annuity Ins. Co.* v. *Knudson,* 534 U. S. 204 (2002), which involved facts similar to those in this case. Much like the "Acts of Third Parties" provision in the Sereboffs' plan, the plan in *Knudson* reserved "'a first lien upon any recovery, whether by settlement, judgment or otherwise,' that the beneficiary receives from [a] third party." *Id.,* at 207. After Knudson was involved in a car accident, Great-West paid medical bills on her behalf and, when she recovered in tort from a third party for her injuries, Great-West sought to collect from her for the medical bills it had paid. *Id.,* at 207–209.

In response to the argument that Great-West's claim in *Knudson* was for "restitution" and thus equitable under §502(a)(3)(B) and *Mertens*, we noted that "not all relief falling under the rubric of restitution [was] available in equity." 534 U. S., at 212. To decide whether the restitutionary relief sought by Great-West was equitable or legal, we examined cases and secondary legal materials to determine if the relief would have been equitable "[i]n the days of the divided bench." *Ibid.* We explained that one feature of equitable restitution was that it sought to impose a constructive trust or equitable lien on "particular funds or property in the defendant's possession." *Id.,* at 213. That requirement was not met in *Knudson*, because "the funds to which petitioners claim[ed] an entitlement" were not in Knudson's possession, but had instead been

placed in a "Special Needs Trust" under California law. *Id.,* at 207, 214. The kind of relief Great-West sought, therefore, was "not equitable—the imposition of a constructive trust or equitable lien on particular property— but legal—the imposition of personal liability for the benefits that [Great-West] conferred upon [Knudson]." *Id.,* at 214. We accordingly determined that the suit could not proceed under §502(a)(3). *Ibid.*

That impediment to characterizing the relief in *Knudson* as equitable is not present here. As the Fourth Circuit explained below, in this case Mid Atlantic sought "specifically identifiable" funds that were "within the possession and control of the Sereboffs"—that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and "preserved [in the Sereboffs'] investment accounts." 407 F. 3d, at 218. Unlike Great-West, Mid Atlantic did not simply seek "to impose personal liability . . . for a contractual obligation to pay money." *Knudson,* 534 U. S., at 210. It alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally, as would be the case with a contract action at law. ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable; that would make §502(a)(3)(B)(ii) an empty promise. This Court in *Knudson* did not reject Great-West's suit out of hand because it alleged a breach of contract and sought money, but because Great-West did not seek to recover a particular fund from the defendant. Mid Atlantic does.

## B

While Mid Atlantic's case for characterizing its relief as equitable thus does not falter because of the nature of the recovery it seeks, Mid Atlantic must still establish that

the basis for its claim is equitable.  See *id.,* at 213 (whether remedy "is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought").  Our case law from the days of the divided bench confirms that Mid Atlantic's claim is equitable.  In *Barnes* v. *Alexander,* 232 U. S. 117 (1914), for instance, attorneys Street and Alexander performed work for Barnes, another attorney, who promised them "one-third of the contingent fee" he expected in the case. *Id.,* at 119.  In upholding their equitable claim to this portion of the fee, Justice Holmes recited "the familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.,* at 121.  On the basis of this rule, he concluded that Barnes' undertaking "create[d] a lien" upon the portion of the monetary recovery due Barnes from the client, *ibid.*, which Street and Alexander could "follow . . . into the hands of . . . Barnes," "as soon as [the fund] was identified," *id.,* at 123.

Much like Barnes' promise to Street and Alexander, the "Acts of Third Parties" provision in the Sereboffs' plan specifically identified a particular fund, distinct from the Sereboffs' general assets—"[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)"— and a particular share of that fund to which Mid Atlantic was entitled—"that portion of the total recovery which is due [Mid Atlantic] for benefits paid."  App. to Pet. for Cert. 38a.  Like Street and Alexander in *Barnes*, therefore, Mid Atlantic could rely on a "familiar rul[e] of equity" to collect for the medical bills it had paid on the Sereboffs' behalf. *Barnes*, *supra,* at 121.  This rule allowed them to "follow" a portion of the recovery "into the [Sereboffs'] hands" "as soon as [the settlement fund] was identified," and impose on that portion a constructive trust or equitable lien.  232 U. S., at 123.

The Sereboffs object that Mid Atlantic's suit would not

have satisfied the conditions for "equitable restitution" at common law, particularly the "strict tracing rules" that allegedly accompanied this form of relief. Reply Brief for Petitioners 8. When an equitable lien was imposed as restitutionary relief, it was often the case that an asset belonging to the plaintiff had been improperly acquired by the defendant and exchanged by him for other property. A central requirement of equitable relief in these circumstances, the Sereboffs argue, was the plaintiff's ability to "'trac[e]' the asset into its products or substitutes," or "trace his money or property to some particular funds or assets." 1 D. Dobbs, Law of Remedies §4.3(2), pp. 591, n. 10, 592 (2d ed. 1993).

But as the Sereboffs themselves recognize, an equitable lien sought as a matter of restitution, and an equitable lien "by agreement," of the sort at issue in *Barnes*, were different species of relief. See Brief for Petitioners 24–25; Reply Brief for Petitioners 11; see also 1 Dobbs, *supra*, §4.3(3), at 601; 1 G. Palmer, Law of Restitution §1.5, p. 20 (1978). *Barnes* confirms that no tracing requirement of the sort asserted by the Sereboffs applies to equitable liens by agreement or assignment: The plaintiffs in *Barnes* could not identify an asset they originally possessed, which was improperly acquired and converted into property the defendant held, yet that did not preclude them from securing an equitable lien. To the extent Mid Atlantic's action is proper under *Barnes*, therefore, its asserted inability to satisfy the "strict tracing rules" for "equitable restitution" is of no consequence. Reply Brief for Petitioners 8.

The Sereboffs concede as much, stating that they "do not contend—and have never suggested—that any tracing was historically required when an equitable lien was imposed *by agreement*." *Id.,* at 11. Their argument is that such tracing was required when an equitable lien was "predicated on a theory of *equitable restitution*." *Ibid.* The

Sereboffs appear to assume that *Knudson* endorsed application of all the restitutionary conditions—including restitutionary tracing rules—to every action for an equitable lien under §502(a)(3). This assumption is inaccurate. *Knudson* simply described in general terms the conditions under which a fiduciary might recover when it was seeking equitable restitution under a provision like that at issue in this case. There was no need in *Knudson* to catalog all the circumstances in which equitable liens were available in equity; Great-West claimed a right to recover in restitution, and the Court concluded only that equitable restitution was unavailable because the funds sought were not in Knudson's possession. 534 U. S*.,* at  214.

The Sereboffs argue that, even under *Barnes*, equitable relief would not have been available to fiduciaries relying on plan provisions like the one at issue here, because when the beneficiary agrees to such a provision "no third-party recovery" exists which the beneficiary can "place . . . beyond his control and grant [the fiduciary] a complete and present right therein." Brief for Petitioners 25–26 (internal quotation marks omitted). It may be true that, in contract cases, equity originally required identification at the time the contract was made of the fund to which a lien specified in the contract attached. See, *e.g., Trist* v. *Child,* 21 Wall. 441, 447 (1875) ("[A] mere agreement to pay out of such fund is not sufficient. Something more is necessary. There must be an appropriation of the fund *pro tanto*"). But *Barnes* explicitly disapproved of this rule, observing that *Trist* addressed the issue only in dicta (since the contract containing the lien provision in *Trist* was illegal), and treating the "question as at large," even in light of earlier opinions that had dealt with it head on. *Barnes*, *supra,* at 120 (citing *Trist*, *supra; Christmas* v. *Russell,* 14 Wall. 69 (1872); *Wright* v. *Ellison,* 1 Wall. 16 (1864)).

Apart from those cases, which *Barnes* discredited, the

Sereboffs offer little to undermine the plain indication in *Barnes* that the fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed. See 4 S. Symons, Pomeroy's Equity Jurisprudence §1236, pp. 699–700 (5th ed. 1941) ("[A]n agreement to charge, or to assign . . . property not yet in existence," although "creat[ing] no legal estate or interest in the things when they afterwards come into existence . . . does constitute an equitable lien upon the property" just as would "a lien upon specific things existing and owned by the contracting party at the date of the contract"); *Peugh* v. *Porter,* 112 U. S. 737, 742 (1885) ("[I]n contemplation of equity, [it] is not material" that the "very fund now in dispute" was "not . . . in existence" when an equitable lien over that fund was created). Indeed, the most they can muster in this regard are several state cases predating *Barnes* and a single decision that rests, contrary to the Sereboffs' characterization, on the simple conclusion that a contractual provision purporting to secure an equitable lien did not properly do so. See Brief for Petitioners 26; Reply Brief for Petitioners 12; *Taylor* v. *Wharton*, 43 App. D. C. 104 (1915).

The Sereboffs finally fall back on the argument that *Barnes* announced a special rule for attorneys claiming an equitable lien over funds promised under a contingency fee arrangement. Outside of this context, they say, the "typical rules regarding equitable liens by assignment" persisted and would have prevented recovery here. Reply Brief for Petitioners 13.

But *Barnes* did not attach any particular significance to the identity of the parties seeking recovery. See 232 U. S*.,* at 119. And as *Barnes* itself makes clear, other cases of this Court—not involving attorneys' contingency fees— apply the same "familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to

the thing." *Id.,* at 121. In *Walker* v. *Brown,* 165 U. S. 654 (1897), for instance, the Court approved an equitable lien over municipal bonds transferred to a company to facilitate its business. When a supplier of the company suspended shipments because of delinquent debts, the individual who had transferred the bonds assured the supplier that "'any indebtedness that they may be owing you at any time, shall be paid before the return to me of these bonds . . . and that these bonds . . . are at the risk of the business of [the company], so far as any claim you may have against [it].'" *Id.,* at 663. The Court found that this undertaking created an equitable lien on the bonds, which the supplier could enforce against the individual after the bonds had been returned to him when the company became insolvent. *Id.,* at 666. As in *Barnes*, the Court resolved the case by applying general equitable principles, stating that "[t]o dedicate property to a particular purpose, to provide that a specified creditor and that creditor alone shall be authorized to seek payment of his debt from the property or its value, is unmistakably to create an equitable lien." 165 U. S., at 666.

## C

Shifting gears, the Sereboffs contend that the lower courts erred in allowing enforcement of the "Acts of Third Parties" provision, without imposing various limitations that they say would apply to "truly equitable relief grounded in principles of subrogation." Reply Brief for Petitioners 5. According to the Sereboffs, they would in an equitable *subrogation* action be able to assert certain equitable defenses, such as the defense that subrogation may be pursued only after a victim had been made whole for his injuries. *Id.,* at 5–6. Such defenses should be available against Mid Atlantic's action, the Sereboffs claim, despite the plan provision that "[Mid Atlantic's] share of the recovery will not be reduced because [the beneficiary] has not received the full damages claimed, unless [Mid Atlantic] agrees in writing to a re-

duction." App. to Pet. for Cert. 38a.

But Mid Atlantic's claim is not considered equitable because it is a subrogation claim. As explained, Mid Atlantic's action to enforce the "Acts of Third Parties" provision qualifies as an equitable remedy because it is indistinguishable from an action to enforce an equitable lien established by agreement, of the sort epitomized by our decision in *Barnes*. See 4 Palmer, Law of Restitution §23.18*(d)*, at 470 (A subrogation lien "is not an express lien based on agreement, but instead is an equitable lien impressed on moneys on the ground that they ought to go to the insurer"). Mid Atlantic need not characterize its claim as a freestanding action for equitable subrogation. Accordingly, the parcel of equitable defenses the Sereboffs claim accompany any such action are beside the point.[2]

\*    \*    \*

Under the teaching of *Barnes* and similar cases, Mid Atlantic's action in the District Court properly sought "equitable relief" under §502(a)(3); the judgment of the Fourth Circuit is affirmed in relevant part.

*It is so ordered.*

---

[2] The Sereboffs argue that, even if the relief Mid Atlantic sought was "equitable" under §502(a)(3), it was not "appropriate" under that provision in that it contravened principles like the make-whole doctrine. Neither the District Court nor the Court of Appeals considered the argument that Mid Atlantic's claim was not "appropriate" apart from the contention that it was not "equitable," and from our examination of the record it does not appear that the Sereboffs raised this distinct assertion below. We decline to consider it for the first time here. See *National Collegiate Athletic Assn.* v. *Smith,* 525 U. S. 459, 470 (1999).