Brant, J.
On October 9, 2003, The Brazilian Church of Framingham, Inc. (“Church”) purchased an abandoned building in Framingham from the Trustees of the ITAMS Really Trust (“Trust”). Because of the building’s condition, its utility systems could not be inspected by the Church prior to the closing on the property. As a result, the attorney for the Church drafted an escrow hold-back agreement to which both parties assented. The hold-back agreement stated:
The Buyer and Seller acknowledge that the oil and gas heating systems, the plumbing system, and all electrical supply to all heating sys *196 terns at the premises cannot be evaluated until after closing which utilities will be completely turned on in the name of the Buyer. The parties agree that the Buyer will turn these utilities on after closing. At closing, the sum of $20,000.00 of Seller’s funds will be held by Dionisi & Anderson, as escrow agent. Any necessary plumbing and electrical repairs preliminary to Buyer having the heating systems inspected shall be done and invoices for same presented to the escrow agent for immediate payment. Thereafter, Buyer shall have professional heating contractors activate the oil and gas systems and fully inspect same. Said systems shall be repaired/replaced as necessary or desirable per the recommendations of the professional heating contractors. Invoices for all work will be presented to the escrow agent for immediate payment. Any unused funds, after all repairs are completed, shall be returned to the Seller.
After the closing, the Church did not activate any of the utilities and did not present the escrow agent with any requests for reimbursement for inspections or repairs. Instead, the Church simply contracted for all of the systems to be replaced.
After more than a year had passed without any action by the Church in compliance with the hold-back agreement, the Trust’s attorney wrote to the attorney for the Church requesting a release of the escrow funds. When the moneys were not forthcoming, the Trust commenced this suit to recover the full $20,000.00 amount. The Church counterclaimed for $40,000.00, alleging that it had spent that amount to replace the building’s heating system. After a jury-waived trial, the judge found that the Church had failed to comply with any of the prerequisites for drawing upon the $20,000.00 escrow fund, and that the Church had breached the escrow hold-back agreement “in more part” than had the Trust. The judge ruled, however, that while “[ejach party’s case is primarily based in law,” “equity has some role.” Thus, the judge ordered judgment for the Trust on both its complaint and the Church’s counterclaim, but awarded damages of only $12,000.00. The Trust filed this appeal.[3]
The dispositive issue on the Trust’s complaint for the return of all of the escrow funds was whether the Church had any right to retain any portion of that money. The Church’s right, if any, was obviously governed by the terms of the hold-back agreement which it drafted and to which it assented. “In the absence of an ambiguity, [the courts] will ‘construe the words of the [agreement] in their usual and ordinary sense.’” 116 Commonwealth Condo. Trust v. Aetna Cas. & Sur. Co., 433 Mass. 373, 376 (2001), quoting Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 280 (1997). An agreement must be interpreted “to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties.” Shane v. Winter Hill Fed. Sav. & Loan Ass’n, 397 Mass. 479, 483 (1986).
The unambiguous terms of the parties’ agreement required the Church to (1) turn on the utilities after the closing, (2) present invoices to the escrow agent for payment from the $20,000.00 fund of any preliminary plumbing and electrical repairs necessary for a heating system inspection, (3) have professional heating contractors activate the oil and gas systems and inspect them, (4) follow the advice of the professional contractors in determining whether to repair or replace the heating systems, and (5) present invoices'for the work to the escrow agent for immediate payment. The specified inspections and presentation of invoices to the escrow agent constituted conditions precedent to any payments or deductions from the $20,000.00 fund. “A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract.”
*197 Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45 (1991). There was no error in the trial judge’s finding, fully supported by uncontroverted evidence, that the Church failed to satisfy any of the conditions precedent to the escrow agent’s release, and its use, of the reserved funds. Given the absence of any inspections or repairs undertaken or completed by the Church in compliance with contract terms, the return of “any unused funds” to the Trust was mandated by the hold-back agreement. Judgment was properly entered, therefore, for the Trust on both its complaint and the Church’s counterclaim.
The Trust was, however, entitled to contract damages in the full $20,000.00 amount of the unused escrow funds. “Consequential damages are those that cannot be reasonably prevented and arise naturally from the breach, or which are reasonably contemplated by the parties.” Delano Growers’ Coop. Winery v. Supreme Wine Co., 393 Mass. 666, 680 (1985). The parties unequivocally provided in the hold-back agreement for the return to the Trust of “any unused funds.”
The trial judge’s ruling that “equity has some role because all parties expected repairs between $0-$20,000,” and his order for a judgment “in law and equity” in the amount of only $12,000.00 was error. This case was a contract action in law to recover damages in the amount of escrow moneys that had not been expended for anticipated repairs undertaken in compliance with the parties’ written agreement. It was not a suit for an injunction, specific performance, rescission, reformation, or any other form of equitable relief. See generally Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356 (2006); Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Court, 448 Mass. 15 (2006). Although the district courts have equity jurisdiction in cases in which money damages are also sought, G.L.c. 218, §19C, equitable relief was neither requested, nor appropriate, in this case.
Accordingly, the trial court’s judgment for the Trust on the Church’s counterclaim is affirmed. The judgment for the Trust on its complaint in the amount of $12,000.00 is vacated. The case is returned to the Framingham Division of the District Court Department for the entry of judgment for the Trust on its complaint in the amount of $20,000.00, plus interest and costs.
So ordered.

 The Church did not appeal.