NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0336n.06

No. 10-3083

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 18, 2011*

LEONARD GREEN, Clerk

PAMELA G. SHAFFER,                                       )
                                                         )
    Plaintiff-Appellant,                                 )
                                                         )
v.                                                       )    ON  APPEAL  FROM  THE  UNITED
                                                         )    STATES DISTRICT COURT FOR THE
RAWLINGS COMPANY, aka The Rawlings                       )    NORTHERN DISTRICT OF OHIO
Company, aka The Rawlings Group, aka The                 )
Rawlings Company PLLA, aka Rawlings &                    )
Associates  PLLC,  aka  The  Rawlings                    )
Company, Inc.,                                           )
                                                         )
    Defendant-Appellee.                                  )


Before:  MARTIN and SUTTON, Circuit Judges; GRAHAM, District Judge.[*]


SUTTON, Circuit Judge.  After Pamela Shaffer was hurt in a car accident, her workplace

health insurance plan advanced her money for medical expenses.  Acting on behalf of the insurance

plan, Rawlings Company, a collections agent, recovered part of the advance from Shaffer's other

insurer.  At that point, Shaffer filed this lawsuit, complaining that ERISA prevented Rawlings from

invoking a subrogation provision in the contract of insurance.  We affirm the district court's

dismissal of her complaint.

---

[*]The Honorable James L. Graham, Senior United States District Judge for the Southern
District of Ohio, sitting by designation.

I.

Shaffer's employer, Honda, provides health insurance through a plan administered by Aetna. The plan covers medical expenses and contains a provision dealing with "Expenses Caused by a Third Party (Subrogation and Right to Reimbursement)." R.1 ¶ 26; R.9-4 at 45. The provision applies to "expenses . . . caused by another person," and says the plan "may advance payment" for these expenses, but it "will not cover" them. *Id.* The same provision gives the plan a "right of recovery of any payments from the third party, liability insurance, . . . medical payments, or no-fault or school insurance benefits which may be payable to [the beneficiary] or the third party regardless of whether [the beneficiary has] been made whole." *Id.* The plan "retain[s] the right to pursue all rights of recovery" without an agreement from the beneficiary and "may . . . require [the beneficiary] to file claims for payments" with other parties. *Id.*

Shaffer also has medical insurance through her car insurance provider, American Home Assurance Corporation. This plan covers medical expenses up to $10,000.

In December 2006, Shaffer was in a car accident caused by another motorist. The Honda insurance plan advanced Shaffer more than $10,000 for medical expenses. The plan recruited Rawlings, a collections agent, to seek reimbursement from third parties. Rawlings filed a claim with Shaffer's American Home insurance plan and recovered the entire allowable amount—$10,000.

Shaffer sued Rawlings, alleging that the collections agent had violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, by requesting funds from one

of Shaffer's insurers before Shaffer recovered any funds from the same insurer. Rawlings filed a motion to dismiss, after which Shaffer filed a response and a motion to amend her complaint. The court granted Rawlings' motion to dismiss and denied Shaffer's motion to amend the complaint as futile.

II.

To survive a motion to dismiss, Shaffer must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires more than the "sheer possibility" of relief but less than a "probab[le]" entitlement to relief. *Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937, 1949 (2009).

Shaffer's insurance contract with Honda, as an initial matter, gave Rawlings the right to do what it did—to seek reimbursement from other insurance providers for Honda's $10,000 advance. The plan documents establish the plan's right to recover "any payments from . . . liability insurance, . . . medical payments, or no-fault or school insurance benefits" payable to Shaffer, R.1 ¶ 26; R.9-4 at 45, including her American Home insurance. The documents describe the right as both "subrogation," meaning the plan may assert a claim on Shaffer's behalf that she has not yet made herself, and "reimbursement," meaning the plan may request from Shaffer funds that she has already recovered. The plan also reserves the right to pursue the funds without any further agreement from Shaffer, the plan beneficiary. Shaffer offers no meaningful argument to the contrary about this straightforward interpretation of the insurance plan.

What Shaffer argues instead is that ERISA prevents Rawlings (and Honda) from using this subrogation provision. In doing so, she raises a two-step argument. Step one: ERISA, together with two recent Supreme Court cases, establishes that Rawlings may not sue American Home (or Shaffer) for damages to enforce the subrogation or reimbursement provision. Step two: Rawlings therefore may not ask American Home to comply with the subrogation–reimbursement provision.

There are several problems with this argument, not the least of which is one of logic. Even if we assume for the sake of argument that ERISA does not permit Rawlings to sue American Home (or Shaffer) for damages or legal relief, that says nothing by itself about whether Rawlings may try to enforce a legitimate and far-from-unusual insurance contract. A law may place limits on lawsuits without preventing the parties from agreeing to follow the terms of a contract on their own. Not every contract right requires the parties to make a federal case out of it.

We could stop there. But, for the sake of completeness, let us explain why § 502 of ERISA and the cited Supreme Court cases also do not support this argument. Section 502 says:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
>> (A) for the relief provided for in subsection (c) of this section [relating to a plan administrator's duty to disclose information], or
>>
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . .
>
> (3) by a participant, beneficiary, or fiduciary

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
>
> (B) to obtain other appropriate equitable relief
>
>> (i) to redress such violations or
>>
>> (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

Shaffer reads this language to establish that "there is no right of subrogation or reimbursement against plan participants' funds unless the funds are in the actual or constructive possession of the participants." R.1 ¶ 43(a). The text shows otherwise. The subsection speaks to the availability of "a civil action." It pertains only to judicial remedies—the kind of relief that may be sought in judicial proceedings and by whom. Nowhere does it speak to substance, either as to the validity of contractual provisions in general or subrogation and reimbursement clauses in particular. The provision "simply does not address the possibility of a recoupment device to recapture" funds advanced by the plan. *Northcutt v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 467 F.3d 1031, 1036 (7th Cir. 2006). When Congress creates a statutory duty, it does not necessarily create an individually enforceable remedy, *see Alexander v. Sandoval*, 532 U.S. 275 (2001), and no less importantly, a congressional limit on a remedy does not imply the lack of a substantive right.

Shaffer insists that two Supreme Court cases "show[] that a fiduciary does not have a right to be reimbursed for medical expenses paid by an ERISA plan unless there are specifically identifiable funds in the possession and control of the plan participant." Shaffer Br. at 14. The cases

say no such thing and do no such thing. *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), and *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), construed § 502 to mean what it says—that fiduciaries may bring a civil action only for "equitable relief." *Great-West*, 534 U.S. at 206, 221; *Sereboff*, 547 U.S. at 361. In both cases, an ERISA fiduciary sought *judicial* relief from plan participants, requiring the Court to define the scope of civil actions. As *Sereboff* explained, *Great-West* and *Sereboff* provided "occasion[s] to clarify the scope of the remedial power conferred *on district courts*," 547 U.S. at 361 (emphasis added), not on contracting parties. *See Great-West*, 534 U.S. at 209 (explaining focus on ERISA's "enforcement scheme"). The decisions do not speak to extra-judicial contractual reimbursement schemes. *See Northcutt*, 467 F.3d at 1037.

Shaffer objects that confining *Great-West* and *Sereboff* to cases "where an actual lawsuit is brought . . . would . . . render the rulings . . . meaningless." Shaffer Br. at 14. Not so. *Great-West* and *Sereboff* still provide a limitation on the types of *judicial* remedies available to fiduciaries in civil actions. If anything, it is Shaffer's interpretation of § 502 that makes the key words in the statute—most notably "civil action" and "equitable relief"—meaningless. Superfluity in exchange for expanding the scope of prior decisions is "a poor trade of statutory anomalies," particularly when as here there is no anomaly to start with. *CSX Transp., Inc. v. Ala. Dep't of Revenue*, __ U.S. __, 131 S. Ct. 1101, 1114 (2011); *see id.* at 1111–14.

Shaffer next claims that the district court made three fact findings in rejecting her claim, all inconsistent with Civil Rule 12(b)(6). The first determination—whether Shaffer constructively

possessed her American Home insurance funds when Rawlings asserted its claim—did not affect the court's analysis. Although the court said that Shaffer possessed the funds, it did so only in the context of characterizing Rawlings' actions as an attempt to pursue a right of reimbursement as opposed to subrogation. The district court correctly noted that its determination did not affect the analysis. Whether Shaffer constructively possessed the funds is relevant only to whether any relief sought in court would be legal or equitable under § 502. *See Great-West*, 534 U.S. at 207, 213–14. Yet because § 502 does not apply to extra-judicial contractual rights, any constructive-possession determination would be immaterial to the merits of Shaffer's complaint.

The second fact finding does not exist. Shaffer says that the court found that no underlying plan documents exist. But the court made that observation only because *Shaffer* made the allegation in her motion to amend the complaint. Civil Rule 12(b)(6) allows, indeed requires, district courts to assume a claimant's allegation to be true in order to decide whether Shaffer could amend her complaint. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005).

The third fact finding is also non-existent. Shaffer says that the court found that the summary plan description contained a right of reimbursement. But that statement comes from her own allegations, not impermissible fact-finding. She cited the summary plan description's "Subrogation and Right to Reimbursement" clause in her complaint, and the documents incorporated by reference into the complaint confirm the existence of such a provision.

Shaffer maintains that the court "failed to give due consideration to . . . Shaffer's claim that the reimbursement agreement . . . is in violation of public policy." Shaffer Br. at 34. In an apparent attempt to avoid ERISA preemption, Shaffer casts this claim as one about federal (not state) public policy, opting for the fire instead of the frying pan. No general federal common law or public policy exists to void this contractual provision. As explained above, ERISA, *Great-West* and *Sereboff* provide no support for Shaffer's efforts to prevent reliance on contractual terms, as opposed to judicial remedies. Shaffer in the final analysis provides no plausible reason why she can sue Rawlings for asking American Home to comply with the terms of this contract.

Shaffer asserts, last of all, that the court erred by denying her motion to add two allegations to her complaint—that the lack of underlying plan documents renders the subrogation–reimbursement clause void and that the plan administrator acted arbitrarily and capriciously. *See* R.22 at 2–3. The court correctly denied her motion as futile. When there are "no actual 'plans' separate and apart from the [summary plan descriptions] themselves," as is the case here, "the only relevant plan documents," if indeed there are any relevant plan documents, "are the [summary plan descriptions]." *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 668 n.6 (6th Cir. 1998); *see also Admin. Comm. of Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan v. Gamboa*, 479 F.3d 538, 544 (8th Cir. 2007).

III.

For these reasons, we affirm.