PRADO, Circuit Judge,
concurring in part and dissenting in part:
I agree with much of the Court’s analysis regarding the scope of “appropriate equitable relief’ under § 502(a)(3)(B). That analysis, however, should lead to the denial of ACS’s claims. Instead, the Court crafts an unrequested remedy in conflict with Supreme Court precedent. Though I concur in the portion of the judgment affirming the district court’s denial of relief against Judith Griffin and Larry Griffin, I dissent from the award of relief against the Trust and Trustee.
Section 502(a)(3)(B) authorizes “those categories of relief that were typically available in equity.” Mertens v. Hewitt Assocs., 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Elaborating on this construction, the Supreme Court has explained that two factors must be considered equitable to justify relief under § 502(a)(3)(B): (1) “the basis for the plaintiffs claim,” and (2) “the nature of the underlying remedies sought.” Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (alterations omitted); see also Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 361-63, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). The Court made clear in Sereboff that the first factor is satisfied when an ERISA fiduciary seeks to enforce a plan’s reimbursement provision because “case law from the days of the divided bench” would recognize such a claim as enforcing an equitable lien by agreement. 547 U.S. at 363, 126 S.Ct. 1869. Thus, that factor does not impede recovery; the basis for ACS’s claim is equitable.
But ACS must also show that its requested remedy is equitable rather than legal. “[A] judgment imposing a merely personal liability on the defendant to pay a sum of money” is a legal remedy. Knudson, 534 U.S. at 213, 122 S.Ct. 708. An equitable remedy, by contrast, seeks the return of “money or property [that is] identified as belonging in good conscience to the plaintiff [and can] clearly be traced to particular funds or property in the defendant’s possession.” Id. Though it takes the form of a payment of money, the remedy of restoring to the plaintiff particular funds in the defendant’s possession is equitable because it is as much a declaration *531 that the plaintiff is the true owner of the funds as it is a money judgment. See id. (“A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner.”). Thus, for the remedy to lie in equity, “the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant’s possession.” Id. at 214, 122 S.Ct. 708. If the defendant does not possess the funds, the underlying basis of the equitable remedy is lost. See, e.g., Amschwand v. Spherion Corp., 505 F.3d 342, 346 (5th Cir.2007) (“[T]he sine qua non of restitutionary recovery available under § 502(a)(3) is a defendant’s possession of the disputed res.”), implicitly overruled on other grounds by CIGNA Corp. v. Amara, — U.S. —, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011), as recognized in Gearlds v. Entergy Servs. Inc., 709 F.3d 448, 450-52 (5th Cir.2013); id. at 347 (“[P]ossession is the key to awarding equitable restitution in the form of a constructive trust or equitable lien.”); id. at 347-48 (“A defendant’s possession of the disputed res is central to the notion of a restitutionary remedy, which was conceived not to assuage a plaintiffs loss, but to eliminate a defendant’s gain.”); Restatement (Third) of Restitution and Unjust Enrichment § 55 cmt. h (2011) (“If the claimant cannot show an equitable entitlement to specific property in the hands of the defendant, the underlying basis of the remedy is lost.”).
Given this emphasis on possession, it is curious that the Court today grants relief when none of the named defendants actually possesses the disputed funds.[1] Reading the Court’s opinion, one gets the impression that the funds reside in the Trust, waiting to be returned to their rightful owner. In reality, however, neither the Trust nor the Trustee possesses the settlement funds that ACS claims an entitlement to. Those funds were instead transferred to Hartford CEBSCO to fund the *532 annuity. ACS’s summary judgment evidence confirms this fact. ACS requested that Larry Griffin “[ijdentify all moneys received and/or disbursed by [the Trust], and state the current balance of funds held by [the Trust].” Larry responded,
Since the date of the settlement, Mr. Griffin has received $843.00 per month in payments administered by [the Trust]. The [Trust] does not have and has not had a balance of funds held in it. Rather, periodic payments are made to it from Hartford Life Insurance Company at the direction of Hartford [CEB-SCO] to fund monthly payments to [the Trust] which were then paid to Mr. Griffin.
(emphasis added). Thus, the only money in the Trust at any given time comes in the form of monthly payments, which are then funneled directly to Larry. This is reflected in the Court’s remedy: “appropriate equitable relief demands the imposition of a constructive trust on the proceeds of the annuity as they accrue to the Special Needs Trust.” Slip Op. at 15 (emphasis added).
But ACS did not seek to satisfy its claim with a payment plan. Instead, ACS alleged that Larry and the Trust “now hold or shortly will hold for the benefit of the Plan proceeds of settlement in an amount no less than $50,076.19” and requested “[t]hat a constructive trust be impressed upon no less than $50,076.19 in funds intended to be paid to or received by the Defendants from any recovery made as compensation for injuries caused by the acts of a third party.” (emphasis added). Though ACS invoked the label “constructive trust,” it did not seek the return of any funds in a defendant’s possession, nor did it, upon learning how the settlement fund was distributed, amend its complaint to seek the imposition of a constructive trust on the proceeds of the annuity or on the funds used by Hartford CEBSCO to purchase the annuity. ACS simply requested “[t]hat judgment be entered against the Defendants in the amount of no less than $50,076.19.” It is not enough that an equitable remedy can be conceived of on these facts. ACS must have sought “to restore to [itself] particular funds or property in the defendant’s possession.” Knudson, 534 U.S. at 214, 122 S.Ct. 708. Because it did not, the remedy ACS sought was legal. Cf. CIGNA Corp. v. Amara, — U.S. —, 131 S.Ct. 1866, 1878-79, 179 L.Ed.2d 843 (2011) (“We noted [in Knudson ] that the fiduciary sought to obtain a lien attaching to (or a constructive trust imposed upon) money that the beneficiary had received from the tort-case defendant. But we noted that the money in question was not the particular money that the tort defendant had paid. And, traditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were particular funds or property in the defendant’s possession.” (internal quotation marks omitted)).
The Court nonetheless crafts a remedy against the Trust but stops short of granting the same relief against Larry, reasoning that “the facts in Knudson so closely parallel those of the instant case as to render a different outcome [for Larry], even an outcome predicated on Serebojf, arguable.” Op. at 528. This reluctance reveals the flaw in the Court’s approach. The Court is undoubtedly correct in seeing a conflict with Knudson because ACS’s claim against Larry is identical to the claim rejected in Knudson. But why does the claim against the Trust not suffer the same fate? It is true that ACS included the Trust as a defendant where the plaintiff in Knudson did not, but that is a hollow distinction when the Trust is as empty as the beneficiary’s pockets. The reason the outcome would have been dif *533 ferent in Knudson had the Trust been included as a defendant is that the Trust was the entity that possessed the funds. See Knudson, 534 U.S. at 214, 122 S.Ct. 708 (“Here, the funds to which petitioners claim an entitlement under the Plan’s reimbursement provision — the proceeds from the settlement of respondents’ tort action — are not in respondent’s possession. As the order of the state court approving the settlement makes clear, the disbursements from the settlement were paid by two checks, one made payable to the Special Needs Trust and the other to respondents’ attorney....”).[2] As mentioned above, that is not the case here. Instead, the Trust and Larry are in the same position: neither possesses the disputed settlement fund, and both simply receive periodic payments from it. If relief were permissible on these facts, the Knudson Court could have produced a similar remedy to the one the Court seeks to impose today. It did not, however, and we should follow that example.
I appreciate the Court’s desire to provide a remedy in this case. Larry’s attorney deliberately structured the settlement to avoid the undisputed obligation to reimburse ACS and, during oral argument, even went so far as to describe this undertaking as similar to money laundering. But it is not our duty to do ACS’s work for it. It should be clear by now that a plan seeking to enforce a reimbursement provision must seek the return of particular funds from whatever party possesses them. Because ACS did not, I respectfully dissent.

. The Court’s reliance on Sereboff's "elimination” of a strict tracing requirement to justify relief against the Trust is unpersuasive. In Sereboff, the Court explained that “[wjhen an equitable lien was imposed as restitutionary relief, it was often the case that an asset belonging to the plaintiff had been improperly acquired by the defendant and exchanged by him for other property.” 547 U.S. at 364, 126 S.Ct. 1869. In this situation equity required that the plaintiff identify the specific funds that he lost and trace it into the defendant's funds or assets to justify relief. Id. But, the Court explained, "an equitable lien sought as a matter of restitution, and an equitable lien 'by agreement' ... were different species of relief.” Id. at 364-65, 126 S.Ct. 1869. A plaintiff enforcing an equitable lien by agreement was not required to identify an asset he originally possessed. Id. at 365, 126 S.Ct. 1869. This is a sensible distinction as the funds subject to an equitable lien by agreement would not necessarily be in existence at the time the agreement was made. See id. at 365-67, 126 S.Ct. 1869.
All of this discussion, however, was in the context of whether § 502(a)(3)(B) could ever authorize an action to enforce a reimbursement provision — a question that had previously divided courts of appeals. See id. at 361, 126 S.Ct. 1869. In essence, the Court simply stated that it is not an obstacle to relief that a plan cannot show that it originally possessed the disputed funds. The Court did not, however, somehow eliminate Knudson's requirement that a plaintiff seek recovery from a particular fund in the defendant's possession. If it had, the Court would have had no reason to question whether the defendant in Sereboff possessed the disputed funds. The Court did, however, analyze the defendant’s possession, ultimately holding that the plaintiff satisfied the requirement because it sought "to recover a particular fund from the defendant.” Id. at 363, 126 S.Ct. 1869. Here, the Court fails to adequately address how the requirement that the defendant be in possession of the specified funds has been satisfied as to the Trust.

. Indeed, most of the cases from other circuits the Court cites involve specified funds that are intact and in the possession of a defendant. See, e.g., Admin. Comm. for Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Horton, 513 F.3d 1223, 1228-29 (11th Cir.2008) ("In the instant case, the Administrative Committee properly seeks equitable restitution of a specifically identifiable fund in possession of a defendant. As required by Knudson, the Administrative Committee asserts title and right to possession of particular property that is in the hands of Ms. Werber in her capacity as Joshua's conservator. The money Ms. Werber holds in trust has been identified as belonging in good conscience to the Administrative Committee by virtue of the Plan's terms, and the money can clearly be traced to a particular fund in the defendant’s possession.” (emphases added)); Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Shank, 500 F.3d 834, 836 (8th Cir.2007) ("The Committee's claim meets Sereboff’s requirements for equitable restitution: it seeks (1) the specific funds it is owed under the terms of the plan — i.e., the money it paid to cover Shank’s medical expenses; (2) from a specifically identifiable fund that is distinct from the Shank's general assets — i.e., the special needs trust; and (3) that is controlled by defendant James Shank, the trustee.” (emphases added)).