**Michael Lee SOSINSKI, Plaintiff,**

**v.**

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

Case No. 13–13576.

United States District Court,
E.D. Michigan,
Southern Division.

Signed April 23, 2014.

724

Joseph Dedvukaj, Bloomfield Hills, MI, for Plaintiff.

D. Andrew Portinga, J. Michael Smith, Jason C. Miller, Miller Johnson, Grand Rapids, MI, for Defendant.

*MEMORANDUM AND ORDER DENY-ING PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINIS-TRATIVE RECORD (Doc. 14) AND GRANTING DEFENDANT'S MO-TION FOR SUMMARY JUDGMENT (Doc. 15)*

AVERN COHN, District Judge.

## I. Introduction

This is a case under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Plaintiff Michael Lee Sosinski (Sosinski) appeals from the final determination of defendant Unum Life Insurance Company (UNUM) that he is not entitled to disability benefits. As

will be explained, Sosinski applied for and received disability benefits from UNUM as a result of injuries sustained in a car accident. Upon later learning that Sosinski was convicted of operating while impaired as a result of the accident, UNUM stopped paying benefits on the grounds that the policy excludes benefits under these circumstances. UNUM has filed a counterclaim seeking to recoup a portion of the benefits it says it overpaid.

Before the Court is Sosinski's motion for judgment on the administrative record seeking to reverse UNUM's decision. Also before the Court is UNUM's motion for summary judgment on its counterclaim seeking a money judgment against Sosinski in the amount of $22,589.52.[1] For the reasons that follow, Sosinski's motion will be denied and UNUM's motion will be granted. A judgment will enter in favor of UNUM in the amount of $22,589.52.

## II. Sosinski's Motion for Judgment on the Administrative Record

### A. Legal Standard—Motion for Entry of Judgment

In *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir.1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures are not appropriate in the Sixth Circuit in denial of benefits actions under ERISA. Rather, a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense. *Wilkins*, 150 F.3d at 618–19 (Gilman, J., concurring in part and setting out the judgment of the court of appeals on the issue regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in *Wilkins*[2] by rendering findings of fact and conclusions of law based solely upon the administrative record. *See Eriksen v. Metro. Life Ins. Co.*, 39 F.Supp.2d 864 (E.D.Mich.1999).

### B. Standard of Review

The parties have not articulated the standard of review of UNUM's decision to stop paying Sosinski's benefits. The policy contains the following language:

The Plan, acting through the Plan Administrator, delegates to UNUM and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan.... Benefit determina-

---

1. UNUM says it made an "administrative decision" to request reimbursement for only the most recent 24 month period of the overpayment, which it says totals $22,589.52. UNUM calculates the full amount of the overpayment, from June 2009 to June 19, 2013, is $45,149.04.

2. The court of appeals' "Suggested Guidelines" are as follows:
 1. As to the merits of the action, the district court should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
 2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
 3. ... the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.
 150 F.3d at 619.

tions include determining eligibility for benefits and the amount of benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinates must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

▬ This language invokes the arbitrary and capricious standard of review as it confirms that UNUM has discretionary authority to construe and interpret the provisions of the Plan. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Miller v. Metro. Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991). This standard is the "least demanding form of judicial review." *Admin. Comm. of the Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson,* 164 F.3d 981, 989 (6th Cir. 1999). This requires "review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. W.-S. Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir.2003). The plan administrator's decision should be upheld if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Glenn v. MetLife,* 461 F.3d 660, 666 (6th Cir.2006), *aff'd, Met. Life Ins. Co. v. Glenn,* 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). The standard, although deferential, is not "inconsequential." *Moon v. Unum Provident Corp.,* 405 F.3d 373, 379 (6th Cir.2005). "While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Id.*

The Court makes the findings of fact and conclusions of law based on the administrative record.[3]

## C. Findings of Fact

### 1. Relevant Plan Provision

The Plan contains the following exclusion:

WHAT DISABILITIES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

— intentionally self-inflicted injuries.

— active participation in a riot.

— loss of a professional license, occupational license or certification.

— commission of a crime for which you have been convicted.

— pre-existing condition.

### 2. Sosinski's Claim

On March 22, 2009, Sosinski was involved in a single car accident when he hit a tree. At the time of the accident, Sosinski was speeding in excess of 90 miles per hour. Sosinski was ejected from the car and suffered a closed head and other injuries. A crash report shows the presence of alcohol and drugs based on the results of a blood test.

At the time of the accident, Sosinski was a participant in the Plan through his employer, Hascall Steel & Supply. UNUM is the plan administrator. After his accident, Sosinski filed an application for long term disability benefits with UNUM. UNUM approved his claim and began paying benefits beginning on June 20, 2009. His benefits were $941.23 per month.

At some point thereafter, UNUM became aware that Sosinski had plead no contest to a charge of operating while impaired. The administrative record shows Sosinski was charged on June 19, 2009.

---

**3.** The administrative record has been filed as Docs. 11 and 12.

He was sentenced in January 2010, following his plea, to 12 months probation.

On July 9, 2013, UNUM wrote to Sosinski, explaining that his benefits have been terminated. The letter states in pertinent part:

Your Long Term Disability benefit payments are no longer approved. You became disabled as a result of your commission of a crime for which you were convicted. Such disabilities are not covered under your plan and benefit payments should not have been extended to you.

. . . .

You became disabled due to injuries sustained in a motor vehicle accident on March 22, 2009. During our initial telephone call with you on October 15, 2009, you advised us that you had lost control of your vehicle and hit a tree. You indicated you did not really remember what happened and your family had to tell you what occurred. You did not advise us that you had been charged with any crime in conjunction with this accident. We had asked you to provide us with a copy of your motor vehicle accident report and sent you an accident questionnaire to complete.

. . . .

We have received a letter from the Warren Police Department showing you were arrested on July 17, 2009 for OUI (operating under the influence) of Intoxicating Liquor—MV (motor vehicle). . . .

You pleaded "nolo contendre" (no contest) and were found guilty. A finding of guilty, through either plea or trial, constitutes a conviction under the policy. Your policy does not cover any disabilities caused by, contributed to by, or resulting from your commission of a crime for which you have been convicted.

Sosinski, through counsel, filed an appeal. UNUM affirmed its decision on appeal. The appeal letter states in relevant part:

Mr. Sosinski last worked in March 2009 due to injuries resulting from a motor vehicle accident. According to our records, he was estimated to have been driving at a speed of 90 plus miles per hour. He was ejected at the time of the crash and suffered a closed head injury.

The March 2009 crash report indicated the presence of alcohol and drugs based on the blood tests taken at the scene of the accident. This report described your client's actions as reckless driving.

. . . .

Unum recently gathered information indicating Mr. Sosinski was found guilty of operating while impaired and with a suspended/revoked license. His sentence included a fine and probation. . . .

Mr. Sosinski committed and was convicted of a crime for which actions of driving a motor vehicle while under the influence of alcohol. His actions of driving while intoxicated caused, contributed to, and/or resulted in the motor vehicle accident that resulted in his injuries and disability.

We determined that Mr. Sosinski's disability is excluded from coverage under the terms of this policy. His disability was caused by, contributed to by, and/or resulted from his commission of a crime for which he was convicted.

Sosinski then filed this action.

### D. Conclusions of Law

#### 1. Choice of law

Sosinski spends a good deal of time arguing that Michigan law applies to this case, specifically principles of Michigan contract law. As support, he cites to the

following Plan language: "This policy is delivered in and is governed by the law of the governing jurisdiction [Michigan] ..." This argument misses the mark for several reasons. First, Sosinski fails to cite the remainder of the language which states "and to the extent applicable by the Employment Retirement Income Security Act of 1974." The parties agree that the Plan is an ERISA plan. The Sixth Circuit has developed a body of case law regarding the proper interpretation of ERISA plans and evaluation of ERISA claims. *See Wilkins, supra.* Sosinski has provided no authority for supplanting this law with the law of a state in which an ERISA plan is administered. In fact, the authority is to the contrary, as discussed below.

■■■■ It is well established that an ERISA plan is governed by federal common law. *Univ. Hosps. of Cleveland v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 437 (6th Cir.2006). "[P]arties may not contract to choose state law as the governing law of an ERISA-governed benefit plan." *Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 791 (8th Cir.1998). In other words, the choice of law provision in the contract does not alter the outcome as parties may not contract to choose state law as the governing law of an ERISA-governed benefit plan. A federal court must apply federal common law when deciding federal questions. *See Robbins v. Iowa Road Builders Co.*, 828 F.2d 1348, 1352–53 (8th Cir.1987); *see also Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The question of coverage is clearly one of federal law. *See also Morton v. Smith*, 91 F.3d 867, 871 (7th Cir.1996) (dicta: choice-of-law provision does not limit trustees of an ERISA plan to the confines of state law); *In re Sears Retiree Group Life Ins. Litig.*, 90 F.Supp.2d 940, 951 (N.D.Ill.2000) ("Even if

Sears intended to adopt Illinois law for purposes of interpreting the Plan documents, which is not at all certain, ERISA preemption would negate such an attempt. A choice of law provision does not operate to waive the applicability of federal law regarding interpretation of an ERISA plan.").

■■■■ To be sure, in developing federal common law rules of contract interpretation, we take direction from both state law and general contract law principles. *Regents of the Univ. of Michigan v. Agency Rent–A–Car*, 122 F.3d 336, 339 (6th Cir.1997). "The general principles of contract law dictate that we interpret the Plan's provisions according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 (6th Cir.1998). Courts "must give effect to the unambiguous terms of an ERISA plan." *Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996).

### 2. Analysis

The thrust of Sosinski's argument is that the term "conviction" under the Plan is ambiguous because it does not define what a conviction means. UNUM says that the term "conviction" is not ambiguous.

The Court agrees with UNUM. To "convict" means: "To find (a person) guilty of a criminal offense upon a criminal trial, a plea of guilty, *or a plea of nolo contendere (no contest).*" Black's Law Dictionary (9th Ed.) (emphasis added). Thus, UNUM's determination that Sosinski's no contest plea led to a "conviction" is reasonable. The Plan does differentiate or make mention of any type of plea that may lead to a conviction. Rather, the Plan is clear that it is a conviction, not a plea, which triggers the exclusion from coverage.

Sosinski's argument that the Plan should have defined "conviction" simply

does not carry the day. The term conviction is not ambiguous. UNUM's interpretation—that a conviction follows a no contest plea—is consistent with the plain meaning of the word.

Moreover, one court examined UNUM's interpretation of the term "conviction" under similar circumstances. In *Harrison v. Unum Life Ins. Co.*, 2005 WL 827090 (D.N.H. Apr. 11, 2005), the plaintiff had been convicted of driving while intoxicated (DWI) under New Hampshire law and was denied benefits under identical policy language. She sued for benefits, arguing that under New Hampshire law her DWI was merely a "violation" and not a "crime," as state law defined it. *Id.* Unum argued that the common dictionary definitions of crime, not the state law definition of crime, should control and that its decision to deny benefits was reasonable. The district court agreed, explaining:

> First, Unum's approach adheres to established contract interpretation principles. The normal rule is that contract language in an ERISA action is to be given its plain meaning. *See Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 586 (1st Cir.1993) (citation omitted). "Dictionaries of the English language are a fundamental tool in ascertaining … plain meaning." *United States v. Lachman*, 387 F.3d 42, 51 (1st Cir.2004); *Levinsky's, Inc. v. Walmart [Wal–Mart] Stores*, 127 F.3d 122, 129 (1st Cir.1997) (stating that "we start, as we often do in searching out the meaning of a word, with the dictionary"); *see also [State v.] Woods*, 139 N.H. [399] at 400, 654 A.2d 960 [ (1995) ] (relying, in part, on Webster's Dictionary for a definition of the word "crime"). Indeed, in *Littlefield v. Acadia Insurance Co.*, 392 F.3d 1 (1st Cir. 2004), the court relied on an American Heritage Dictionary definition of the word "crime" to affirm the defendant's

decision to exclude a plaintiff from coverage under its policy. *Id.* at 8. There, "crime" was defined as "[a]n act committed or omitted in violation of a law forbidding or commanding it and for which punishment is imposed upon conviction." That Unum has relied on a similar dictionary definition to interpret the scope of the policy's criminal act's exclusion thus appears to be both well-reasoned and supported by substantial, legitimate evidence.

Second, Unum's interpretation promotes consistency among similarly situated policy holders. *See* 29 C.F.R. § 2560.503–1(b)(5) (encouraging plan administrators to ensure that plan provisions are "applied consistently with respect to similarly situated claimants"). Because it draws its definition from one interpretive source, all policy holders are bound by Unum's definition. This would not be true if, as Harrison argues, the applicability of the criminal act's exclusion were to depend upon the way in which DWI is classified under the law of each state where the DWI occurred. Under such a regime, similarly situated claimants would receive different treatment depending upon the state in which the "crime" was committed. Compare N.H.Rev.Stat. Ann. § 265:82 (classifying DWI as a violation) with Mass. Gen. Laws Ann. ch. 90 § 24 (2005) (classifying DWI as a misdemeanor).

Third, Unum's interpretation effectuates, rather than undermines the criminal act exclusion's underlying purpose. The exclusion exists to prevent claimants from passing the costs of illegal behavior on to other policy holders. *Cf. Sisters of the Third Order [v. Swedish-American Group Health Ben. Trust ]*, 901 F.2d [1369] at 1372 [ (1990) ] (stating that "[i]njuries arising out of the combination of liquor and motor cars are self-

inflicted, and a health insurance plan ... need not draw down the assets contributed by the provident many to shift the cost of self-destructive behavior"). Harrison's interpretation would have the opposite effect. I reject this construction. *Harrison*, 2005 WL 827090 at *3–4 (footnote omitted).

■ Moreover, a plea of no contest goes to the nature of the plea—not the nature of the judgment. The no contest plea admitted "every essential element of the offense [that is] well pleaded in the charge." *Lott v. United States*, 367 U.S. 421, 426, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961). Even under Michigan law, the finding of guilt pursuant to a no contest plea is a conviction. *See In re Lewis*, 389 Mich. 668, 680–681, 209 N.W.2d 203 (Mich. 1973) (a conviction based on a no contest plea is as conclusive as any other conviction); *Myers v. Sec. of Health & Human Serv.*, 893 F.2d 840, 842 (6th Cir.1990) (referring to a finding of guilt following a no contest plea as a conviction); *United States v. Dennis*, 532 F.Supp. 625, 627 (E.D.Mich.1982) (a conviction based on a no-contest plea "is just as binding upon the defendant as any other judgment of conviction."). *See also Local 1516, Int'l Longshoremen's Assoc. v. United States*, 451 F.Supp. 685, 687–688 (S.D.Ala.1978) (for purposes of ERISA, a finding of guilt following a no contest plea is a conviction).

■ Sosinski goes on to argue that notwithstanding a definition of conviction that captures a no contest plea, UNUM's interpretation is unreasonable, relying on two evidentiary rules. Neither rule applies to this case. Sosinski first cites a Michigan statute, M.C.L. § 257.731, which prohibits subsequent use of traffic convictions in civil actions. This statute, however, is an evidentiary rule for state court proceedings. It has no application to ERISA administrative proceedings, and it does not prohibit an ERISA claims administrator, like UNUM, from considering a conviction in making a benefits decision.

■ Sosinski also argues that the federal rules render his no-contest plea inadmissible. He first cites to Fed.R.Crim.P. 11(f) which provides that: "The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed.R.Crim.P. 11(f). Rule 401 provides:

> (a) Prohibited Uses. In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
> * * *
>
> (2) a nolo contendere plea ...

Fed.R.Evid. 410. Neither rule prohibits UNUM from considering Sosinski's no contest plea. The Sixth Circuit examined Rule 410 in *Myers, supra.* In *Myers*, the government excluded the plaintiff from Medicare based on convictions following no contest pleas. The Sixth Circuit rejected plaintiff's argument that a no contest plea could not be deemed a conviction for purposes of being denied Medicare. The Sixth Circuit noted that "the rules prohibit use of 'a plea of nolo contendere,' not a conviction pursuant to a nolo plea." *Id.* (emphasis original). The Sixth Circuit drew a distinction between the plea itself and the resulting conviction. The court of appeals also discussed case law distinguishing between the use of a conviction from a no contest plea to prove guilt as opposed to use of it where there are "legal consequences to the fact of a conviction." *Id.* at 843.

Here, as in *Myers*, it is Sosinski's conviction, not his plea, which makes him ineligible for benefits. The Plan excluded injuries from "commission of a crime for

which you have been convicted." It is the conviction—and not the nature of his plea or whether or not he admitted guilt—that controls. Thus, Rule 410 does not preclude a plan administrator from considering Sosinski's conviction in determining whether his injuries relate to the commission of a crime for which he was convicted.

Moreover, as the Sixth Circuit in *Myers* noted "the rules prohibit use of a nolo plea 'in any civil or criminal proceeding,' not in an administrative proceeding." *Myers*, 893 F.2d at 843. Rule 410 applies to a court proceeding. When used in another situation, such as an ERISA administrative proceeding, the rule does not apply. Put simply, Rule 410 does not apply to an ERISA plan administrator's benefits determination; it is not a court proceeding.

■ In short, the Plan does not cover "disabilities caused by, contributed to by, or resulting from" the "commission of a crime for which you have been convicted." The issue is not whether Sosinski was disabled or injured; it is whether his injury relates to the conviction. Sosinski was found guilty of the crime of operating while impaired. His injuries resulted from and relate to that incident. As UNUM explained in its letter terminating Sosinski's benefits, the Plan language contemplates that a "a finding of guilty, through either plea or trial, constitutes a conviction under the policy." Sosinski has failed to show that UNUM's decision to stop paying benefits after concluding that Sosinski was subject to the criminal conviction exclusion under the Plan was arbitrary or irrational.

### III. UNUM's Motion for Summary Judgment

UNUM moves for summary judgment on its counterclaim for overpayment of benefits. UNUM seeks $22,589.52, which as noted above represents the most recent 24 month period of overpayment.

### A. Legal Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A factual dispute is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether there is a genuine issue of material fact is determined by asking if a reasonable jury could return a verdict for the non-moving party. *Id.* When evaluating a motion for summary judgment, the facts are to be construed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Analysis

■ As an initial matter, Sosinski argues that Michigan law should apply to UNUM's claim. He also spends a good deal of time arguing about coordination of benefit provisions. These arguments miss the mark. This case is governed by ERISA and UNUM's claim is premised on ERISA. Under § 502(a)(3)(B)(ii) of ERISA, a fiduciary may bring a civil action "to obtain other appropriate equitable relief ... to enforce ... the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii). Hence, only equitable relief is available. *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002); *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006); *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 Fed.Appx. 38 (6th Cir.2007). "For restitution of insurer payments to be of an equi-

table nature [and thus recoverable under ERISA], the restitution must involve the imposition of a constructive trust or equitable lien on 'particular funds or property in the [insured]'s possession.'" *Hall v. Liberty Life Assur. Co. of Boston,* 595 F.3d 270, 274–275 (6th Cir.2010)(quoting *Knudson,* 534 U.S. at 213, 122 S.Ct. 708). "The plan must identify a particular fund, distinct from an insured's general assets, and the portion of that fund to which the plan is entitled." *Id.* (quoting *Sereboff,* 547 U.S. at 363, 126 S.Ct. 1869).

In *Sereboff,* an ERISA plan fiduciary sued beneficiaries for a reimbursement of medical expenses paid by the plan when the beneficiaries had settled with third-party tort-feasors for their injuries. The health plan at issue contained a third-party reimbursement provision. The Supreme Court held that the action to enforce that provision was an equitable remedy, available under ERISA, "because it [was] indistinguishable from an action to enforce an equitable lien established by agreement." *Sereboff,* 547 U.S. at 368, 126 S.Ct. 1869. Important to the Supreme Court's decision was the fact that the plan's third-party reimbursement provision "specifically identified a particular fund, distinct from the [beneficiaries'] general assets ... and a particular share of that fund to which [the fiduciary] was entitled." *Id.*

■ Thus, a repayment claim seeking enforcement of an equitable lien under ERISA must be based on an applicable plan provision that has identified a particular fund, distinct from the beneficiary's general assets, and a particular share of that fund to which the Plan was entitled. *See Trustees of the Intern. Broth. of Elec. Workers Local No. 129 Pension Fund Plan v. Crafton,* 2011 WL 53103 (N.D.Ohio Jan. 7, 2011) (unpublished)(quoting *Sereboff,* 547 U.S. at 364, 126 S.Ct. 1869). This requires an examination of the Plan provisions.

In addition to the Plan provision set forth above which provides it will not cover injuries resulting from a crime for which the insured was convicted, the Plan also provides for a reduction in benefits if a participant receives money from a "deductible source of income" which includes income is received from an automobile policy:

WHAT ARE DEDUCTIBLE SOURCES OF INCOME?

Unum will subtract from your gross disability

payment the following deductible sources of income:

* * *

The amount that you receive or are entitled to receive as disability income payments under any:

-state compulsory benefit act or law.

-automobile liability insurance policy.

-other group insurance plan.

-governmental retirement system as a result of your job with your Employer.

Additionally, in the event that UNUM overpays benefits, the Plan provides that UNUM is entitled to recover the overpayment.

WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

-fraud;

-any error Unum makes in processing a claim; and

-your receipt of deductible sources of income.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

Any unpaid premium due for your coverage under this policy may be recovered by us by offsetting against amounts otherwise payable to you under this policy or by other legally permitted means.

The question is whether this Plan language meets the requirements of *Sereboff* to allow UNUM to recover for the overpayments under ERISA's equitable relief provision. In *Gilchrest*, the Sixth Circuit considered the same language and held that it met *Sereboff*, explaining:

At first blush, it seems that this language would not satisfy the requirements of Sereboff because there is no express lien against a specifically identified fund. When we pause to consider that Unum is seeking to recover overpayments, however, the provisions actually do satisfy the requirements of Sereboff. That is, the Plan's overpayment provision asserts a right to recover from a specific fund distinct from Gilchrest's general assets—the fund being the overpayments themselves—and a particular share of that fund to which the plan was entitled—all overpayments due to the receipt of Social Security benefits, but not to exceed the amount of benefits paid. *See Dillard's Inc. v. Liberty Life Assurance Co.*, 456 F.3d 894, 901 (8th Cir.2006) (affirming summary judgment for plan seeking to recover overpayment of benefits resulting from the receipt of Social Security disability benefits).

In *Gilchrest*, UNUM was seeking overpayments made as a result of the plaintiff receiving Social Security benefits which UNUM had a right to deduct from any disability payment. The Sixth Circuit found that the plan language met *Sereboff* because UNUM had a traceable fund-the overpayment-and a source-the Social Security payments which were from a "deductible source of income."

Here, UNUM has argued it is entitled to restitution for the amounts it overpaid because (1) Sosinski was not entitled to them in the first place as his claim was subject to an exclusion of coverage and (2) Sosinski received income from a "deductible source of income" in the form of benefits from an automobile insurance policy that he did not disclose. Although not framed as such, UNUM is saying that has an identifiable fund—the overpayments—and has identified the sources of the funds. This satisfies *Sereboff* and entitles UNUM to seek equitable relief under § 1132(a)(3).

 As to the first reason (overpayment because benefits were subject to an exclusion), Sosinski's failure to disclose that he was convicted of driving while impaired meets either the "fraud" or "error UNUM makes in processing" his claim. Thus, a source of the funds can be identified which gives UNUM the right to recover the overpayments under ERISA's equitable relief provision.

As to the second reason (overpayment because benefits were paid and he received funds from a deductible source of income), it is undisputed that Sosinski sought and received no-fault auto insurance benefits for his disability, including wage loss benefits. In 2012, Sosinski settled with Auto Club Insurance Association for $360,000 in no-fault benefits, which included $60,000 for wage loss. UNUM says that under the terms of the Plan, these benefits are deductible from any benefits owed by UNUM. This could satisfy *Sereboff's* requirements because there is an overpayment and a source of the overpayment. However, UNUM did not deny benefits based on the fact that Sosinski received wage loss benefits under an automobile policy nor is UNUM seeking to deduct payments. Rather, UNUM is seeking to recover a portion of the benefits it paid because he was not entitled to benefits in

the first instance. Thus, the Court declines to find that this route leads UNUM to be able to prevail on its claim for equitable relief.

Finally, Sosinski's argument that UNUM cannot recover for the overpayments because the money has been spent does not carry the day. The Sixth Circuit in Gilchrist made clear that the fact that the overpayments are dissipated is not relevant, as "strict tracing is not required." *Gilchrest*, 255 Fed.Appx. at 45 (citing *Popowski v. Parrott*, 461 F.3d 1367, 1374 n. 8 (11th Cir.2006)).

Overall, UNUM is entitled to summary judgment on its counterclaim.

## IV. Conclusion

For the reasons stated above, Sosinski's motion for judgment on the administrative record is DENIED. UNUM's motion for summary judgment is GRANTED. A judgment will enter in favor of UNUM in the amount of $22,589.52.

SO ORDERED.