**Donna RHEA, Plaintiff,**

v.

**ALAN RITCHEY, INC. Welfare Benefit Plan and Alan Ritchey, Inc., Defendants.**

Civil Action No. 4:13–cv–00506

United States District Court, E.D. Texas, Sherman Division.

Signed 03/30/2015

---

Lawrence R. Lassiter, Leslie Frank Weisbrod, Miller Weisbrod, LLP, Dallas, TX, for Plaintiff.

Laura D. Schmidt, Downs & Stanford, Joshua P. Martin, Gordon & Rees LLP, Dallas, TX, for Defendants.

*MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

RICHARD A. SCHELL, UNITED STATES DISTRICT JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On February 13, 2015, the report of the Magistrate Judge was entered containing proposed findings of fact and recommendations that Defendants' Motion for Summary Judgment (Dkt. 36) be GRANTED, that Plaintiff's Motion for Summary Judgment (Dkt. 39) be DENIED, and that Plaintiff take nothing by her claims. The report further recommended that it be ORDERED that the Alan Ritchey, Inc., Welfare Benefit Plan is the true and correct owner of the disputed $71,644.77 currently held in trust by Plaintiff via her attorneys, that the Alan Ritchey, Inc., Welfare Benefit Plan is entitled to a constructive trust and equitable lien against these funds, and that Plaintiff and her attorneys should be required to turnover the $71,644.77 to Alan Ritchey, Inc. in its fiduciary capacity for the Welfare Benefit Plan. The report further recommended that, if any documents are necessary to complete this turnover, Plaintiff and her attorneys should also be ordered to complete such documents within 30 days of

the court's final judgment. Finally, the report found that Defendants should also recover their costs, reserving the matter of an award of attorney's fees pending supplemental briefing on the issue.

The court has made a *de novo* review of the objections raised by Plaintiff (*see* Dkt. 58) and is of the opinion that the findings and conclusions of the Magistrate Judge are correct and the objections are without merit as to the ultimate findings of the Magistrate Judge. The court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of this court.

Therefore, Defendants' Motion for Summary Judgment (Dkt. 36) is GRANTED, Plaintiffs Motion for Summary Judgment (Dkt. 39) is DENIED, and Plaintiff shall take nothing by her claims. It is further ORDERED that the Alan Ritchey, Inc., Welfare Benefit Plan is the true and correct owner of the disputed $71,644.77 currently held in trust by Plaintiff via her attorneys, that the Alan Ritchey, Inc., Welfare Benefit Plan is entitled to a constructive trust and equitable lien against these funds, and that Plaintiff and her attorneys shall, within 30 days of the final judgment, turnover the $71,644.77 to Alan Ritchey, Inc. in its fiduciary capacity for the Welfare Benefit Plan. If any documents are necessary to complete this turnover, Plaintiff and her attorneys are also ordered to complete such documents within 30 days of the court's final judgment. Defendants shall also recover their costs.

The court will address any award of attorney's fees and enter final judgment pending completion of the parties' supplemental briefing on the attorney's fees issue.

**IT IS SO ORDERED.**

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

DON D. BUSH, UNITED STATES MAGISTRATE JUDGE

Now before the Court are Defendants' Motion for Summary Judgment (Dkt. 36) and Plaintiff's Motion for Summary Judgment (Dkt. 39). The Court makes its findings below.

### BACKGROUND

This case arises out of Plaintiffs settlement of a medical malpractice claim. Plaintiff's husband was an employee of Defendant Alan Ritchey, Inc. which administers its own employee benefits program. Defendant Alan Ritchey, Inc. is the fiduciary of the plan at issue, the Alan Ritchey Inc. Welfare Benefit Plan ("the Plan"). While being treated for the injuries caused by the alleged malpractice, Defendant Alan Ritchey, Inc. Welfare Benefit Plain paid $71,644.77 of Plaintiff s medical expenses. After Plaintiff settled the medical malpractice suit, Defendants claimed a right to reimbursement.

Plaintiff filed this suit under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), the Employees Retirement and Income Security Act of 1974 ("ERISA"), seeking a declaration that she was not required to reimburse an ERISA plan from a third party settlement. Defendants filed a counterclaim, also seeking equitable relief under ERISA, including the imposition of a constructive trust and an equitable lien, a declaration of the ERISA plan's rights, and a turnover order from this Court concerning a portion of the third party settlement.

In May and June 2014, the parties filed cross-motions for summary judgment as to the claims raised. In August 2014, the Court abated all case deadlines pending the Court's consideration of the pending

motions for summary judgment. Since that date, both sides have supplemented the summary judgment record with amended evidence and recent authorities. The matter ripe is for resolution, and the Court considers the record before it.

In her motion, Plaintiff argues that there is no "plan" document that complies with ERISA or establishes Defendants' right to seek reimbursement for benefits paid out of a personal injury settlement. *See* Dkt. 39. Plaintiff argues that an ERISA plan's authority, including the right to reimbursement, must be set forth in a plan document. Plaintiff seeks summary judgment declaring that Defendants cannot impose a lien on the settlement proceeds because there is no "plan" document establishing a right to reimbursement. Plaintiff also seeks dismissal of Defendants' counterclaims.

Defendants, on the other hand, argue that the benefit plan at issue is an ERISA plan and that the plan documents meet ERISA requirements. *See* Dkt. 36. Defendants seek the imposition of a constructive trust, a declaration of the Plan's ownership interest in the settlement funds, and an order directing Plaintiff and her attorneys to turn over the settlement funds up to the lien amount.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie,* 526 U.S. 541, 549, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ANALYSIS

The first issue the Court addresses is whether there is a plan document that complies with ERISA and establishes Defendants' right to seek reimbursement for benefits paid out of a personal injury settlement.

■ In this case, it is undisputed that, for Defendants to have any right to reimbursement of benefits paid, that right must be spelled out in a written instrument. 29 U.S.C. § 1102(a)(1) ("every employee benefit plan shall be established and maintained pursuant to a written instrument."); *US Airways, Inc. v. McCutchen,* — U.S. ——, 133 S.Ct. 1537, 1548, 185 L.Ed.2d 654 (2013) ("The plan, in short, is at the center of ERISA."). "Every employee benefit plan shall be established and maintained pursuant to a written instrument ... and an administrator must act in accordance with the documents and instruments governing the plan insofar as they accord with the statute." *McCutchen,* 133 S.Ct. at 1548 (internal citations to 29 U.S.C. §§ 1102(a)(1), § 1104(a)(1)(D) omitted).

Plaintiff argues that there is no "plan" document containing a right to reimbursement because Defendants provided her only with document entitled "Summary Plan Description UnitedHealthcare Choice Plus Silver Plan for Alan Ritchey, Inc." (the "Summary Plan Description" or "SPD"). The SPD contains the provisions setting forth the right to subrogation and the right to reimbursement regarding payments by third parties. *See* Dkt. 37–6 at 5–6. The SPD also contains the following provision:

**Plan Document**

This Summary Plan Description presents an overview of your Benefits. In the event of any discrepancy between

this Summary Plan Description and the official Plan Document, the Plan Document shall govern.

Dkt. 37–6 at 1. "Plan" is later defined as UnitedHealthcare Choice Plus Silver Plan for Alana Ritchey, Inc. Health Benefit Plan. ·See Dkt. 37–7 at 4.

Plaintiff· claims that, although the Summary Plan Description itself refers to an official written "plan" document, when she requested a copy of the actual "plan document," Defendants instead offered an affidavit signed by Charla Moss, the Benefits Administrator of Alan Ritchey, Inc., stating that the Summary Plan Description "is the Plan document that has been accepted, ratified, and maintained by the Plan Sponsor, that contains all of the ERISA-required plan provisions, and operates as the Plan's official plan document." Dkt. 36–3 at ¶ 8. Plaintiff argues that the Summary Plan Description does not qualify as the necessary plan document for purposes of establishing a right to reimbursement and that Defendants are now trying to "clean up their sloppy documentation by claiming, after the · fact, that the Summary Plan Description was the 'plan' document all along." Dkt. 39 at 12.

In support of her position, Plaintiff argues that the Supreme Court's decision in *CIGNA Corporation v. Amara* makes it clear that a summary plan description cannot be the plan document. *CIGNA Corporation v. Amara*, 563 U.S. 421, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011). In *Amara*, the dispute arose from inconsistencies between plan summaries or summaries of plan modifications and the plan itself. Accordingly, the *Amara* court found that "the summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)." *Amara*, 131 S.Ct. at 1878. Discussing the desired brevity, clarity, and

simplicity of the plan summary, the Supreme Court reasoned that "[t]o make the language of a plan summary legally binding could well lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers." *Id.* at 1877–78.

The Court finds Plaintiff's construction of the holding in *Amara* to be too broad. The Court finds that, even after *Amara*, a document titled "Summary Plan Description" can be the plan document.

Unlike *Amara*, in this case, it is undisputed that there is no plan document other that the "Summary Plan Description." Although no governing precedent has addressed specifically what a court is to do when there is a plan summary but no plan, since *Amara v. CIGNA*, the Fifth Circuit has narrowly construed the impact of the Supreme Court decision and held:

> Thus, *CIGNA* changes our case law to the extent that the plan text ultimately controls the administrator's obligations in a § 1132(a)(1)(B) action, but *CIGNA* does not disturb our prior holdings that (1) ambiguous plan language be given a meaning as close as possible to what is said in the plan summary, and (2) plan summaries be interpreted in light of the applicable statutes and regulations.

*Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189–90 (5th Cir.2012). In *Koehler*, the Fifth Circuit also critically held "Section 1132(a)(1)(B) does, however, allow courts to look outside the plan's written language in deciding what those terms are, i.e., what the language means." *Id.* at 189–90 (internal quotations omitted). Here, the issue is not an ambiguity in plan language but rather what is to be construed as the plan.

There is also nothing in the precedent before the Court that would indicate that, as a matter of law, a document titled "summary plan" cannot serve as *the* plan where

there is no alternative document. Indeed, although the issue was not disputed, because neither party pointed to an alternative plan document in the record and both parties rely on the summary plan language as the governing text, in *Dudley,* the Fifth Circuit treated a document with a summary plan description as the plan itself. *Dudley v. Sedgwick Claims Mgmt. Servs. Inc.,* 495 Fed.Appx. 470, 471, n. 1 (5th Cir.2012) ("Summary plan descriptions ("SPD") are required by ERISA, 29 U.S.C. § 1022, and **are often a separate document,** used to "apprise [the plan's] participants and beneficiaries of their rights and obligations under the plan.") (emphasis added). The Court also notes that the plain language of the *Amara* decision indicates that it does not create an absolute bar against the enforcement of terms in a "summary." *Amara,* 131 S.Ct. at 1877 ("Even if the District Court had viewed the summaries as plan "terms" (which it did not, see *supra,* at 1875–1876), however, we cannot agree that the terms of statutorily required plan summaries (or summaries of plan modifications) **necessarily may** be enforced (under § 502(a)(1)(B)) as the terms of the plan itself") (emphasis added).

Here, the Summary Plan Description is approximately 120 pages long. *See* Dkt. 37–37–9. It has a Table of Contents, ten separate "Sections," and a Glossary of Defined Terms. *Id.* Indeed, although it refers to itself as the SPD in the body of the document, every single page contains the following footer: "UnitedHeathCare Choice Plus Silver Plan for Alan Ritchey, Inc.—03/01/11." *Id.* It is less a simple description of the plan or communication in readily understandable form as contemplated by *Amara* and more a detailed instrument setting forth the terms and conditions of the plan.

The Court finds that, in the absence of another separate plan document, the "Summary Plan Document" constitutes the plan governing Plaintiff's welfare benefits. Indeed, as recently noted by one district court, "several courts have since held that a summary plan description can constitute a formal plan document, consistent with the holding of *Amara,* so long as no other contradictory plan document exists." *Wise v. Plan Adm'r, IBM Ben. Plan for Retired Employees,* 2014 WL 3849975, *4 (D.Conn.2014) (citing *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey,* 663 F.3d 1124, 1131 (10th Cir.2011); (". . . the SPD does not conflict with the Plan or present terms unsupported by the Plan; rather it is the Plan."); *L & W Assocs. Welfare Ben. Plan v. Estate of Wines ex rel. Wines,* 2014 WL 117349, *6 (E.D.Mich. 2014) (". . . where there is no formal ERISA plan separate and apart from the SPD, the SPD is the relevant plan document.") (citing *Shaffer v. Rawlings Co.,* 424 Fed.Appx. 422 (6th Cir.2011)); *Henderson v. Harford Life and Acc. Ins. Co.,* 2012 WL 2419961, *5 (D.Utah 2012) (". . . the terms of the SPD govern because there are no other ma[s]ter plan documents.")). And, as another district court has recently noted, "[a] plethora of authority exists for the proposition that (i) the holding in *Amara* was specifically targeted towards situations where a summary plan document conflicts with a master plan document and (ii) *Amara* does not address situations where a summary document is the only plan document." *Jenkins v. Grant Thornton LLP,* 2015 WL 349275, *1 (S.D.Fla.2015).

The Court finds that the sworn testimony that there are no documents other than the SPD to govern the plan with respect to Plaintiff's claim is sufficient, and there is no fact issue or ambiguity. The terms of the SPD govern. *Dudley,* 495 Fed.Appx. at 471, n. 1 (citing *Koehler* for its treatment of SPD language as the plan where the two shared identical text).

Next, the Court turns to Plaintiffs argument that the Summary Plan Description cannot be the "plan" document because it does not comply with 29 U.S.C. § 1102. Plaintiff claims that the SPD does not indicate anywhere that it is the document that establishes Defendants' benefits program, arguing that 29 U.S.C. § 1102(a)(1) requires that an ERISA plan must be "established and maintained pursuant to a written instrument." The Court finds this argument unavailing as the SPD is undisputably a written document and the Court has found that it constitutes the plan governing welfare benefits here.

Plaintiff further argues that the SPD does not does not include terms required by section 1102(b). Under 29 U.S.C. § 1102(b), every employee benefit plan shall:

(1) provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subchapter,

(2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedure described in section 1105(c)(1) of this title),

(3) provide a procedure for amending such plan, and for identifying the person who has authority to amend the plan, and

(4) specify the basis on which payments are made to and from the plan. 29 U.S.C. § 1102(b).

Plaintiff argues that Defendants' general counsel testified that the benefit program is funded entirely by the Alan Ritchey, Inc. Employee Benefit Plan Trust, which is never referenced in the SPD. Plaintiff also claims that the amendment provision of the SPD does not comply with ERISA's requirement that it "provide a procedure for amending such plan, and for identifying

the person who has authority to amend the plan." 29 U.S.C. § 1102(b)(3).

In *Curtiss–Wright Corp. v. Schoonejongen*, the Supreme Court characterized the Section 1102(b) requirements (also referred to as Section 402(b) requirements) as "requisite function features of ERISA plans" established so that the plan is "workable." *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 82–83, 115 S.Ct. 1223, 1230, 131 L.Ed.2d 94 (1995). Although the Court's analysis focused on the amendment provisions in Section 1102(b)(3), the Court rejected the argument that the statutory section's requirements were intended to "guarantee that the procedure conveys enough detail to enable beneficiaries to learn their rights and obligations under the plan at any time" and noted that "ERISA already has an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time . . . ," but that such is not accomplished through compliance with Section 1102(b)/402(b). *Id.*; *see also Boos v. AT & T, Inc.*, 643 F.3d 127, 130–31 (5th Cir.2011) (noting that "welfare plans are less heavily regulated than pension plans").

Noting that ERISA exempts welfare benefit plans from elaborate minimum funding and vesting standards, the Supreme Court has also recently explained:

Welfare benefits plans must be established and maintained pursuant to a written instrument, § 1102(a)(1), but employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. As we have previously recognized, employers have large leeway to design disability and other welfare plans as they see fit. And, we have observed, the rule that contractual provisions ordinarily should be enforced as written is especially ap-

propriate when enforcing an ERISA welfare benefits plan. That is because the focus on the written terms of the plan is the linchpin of a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefits plans in the first place.

*M & G Polymers USA, LLC v. Tackett,* — U.S. ——, 135 S.Ct. 926, 933, 190 L.Ed.2d 809 (2015) (internal quotation marks, brackets, and citations omitted).

Keeping in mind this construction of ERISA and of Section 1102(b)/Section 402(b)'s requirements, the Court addresses Plaintiff's challenges to the SPD.

■ As to Plaintiff's claim that the SPD does not identify a funding policy as is required by Subsection (b)(2), the SPD provides that "[a]ll Benefits under the Plan are paid from the general assets of the Plan Sponsor," states that "[a]ny required employee contributions are used to partially reimburse the Plan Sponsor for Benefits under the Plan," and sets forth a method of calculating employee contributions. Dkt. 37–9 at 6. The SPD further defines the Plan Sponsor as "Alan Ritchey, Inc." Dkt. 37–7 at 4. The SPD further provides that the Plan may require a Participant to contribute to the cost of coverage, instructs participants to contact the benefits representative for such information, and provides information on deductibles and co-pays. Dkt. 37 at 8, 11, 13–14.

The Court finds that this sufficiently provides a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of ERISA and also sufficiently identifies the entity, Alan Ritchey, Inc., which maintains a fund on behalf of the plan or through which the plan is funded or benefits are provided. *See* 29 U.S.C. § 1102(b)(1); *see also* 29 C.F.R. § 2520.102–3(q) (setting forth requirements for summary plan descriptions).

That the Trust is not identified within the body of the SPD itself does not create a fact issue as to whether the SPD is workable as an ERISA plan or whether the plan sufficiently states a funding procedure. The SPD provides that the plan is funded by general assets of Alan Ritchey, Inc. According to the summary judgment record, Alan Ritchey, Inc. established with its assets the Alan Ritchey, Inc. Employee Benefit Plan for the "sole purpose of providing permissible benefits." Dkt. 39–8. Defendants' summary judgment affidavit further supports this construction of the document. *See* Dkt. 36–3 at ¶ 5 ("All benefits under the Plan are paid by the Plan Sponsor from assets set aside in a trust or a fund to pay Plan benefits."). There is no authority that would indicate that the funding source—the general assets of Alan Ritchey, Inc.—is not sufficiently set forth in the SPD. The Court also agrees with Defendants that Plaintiff has cited to no authority that requires a self-funded ERISA plan to detail the source of its funding other than to state it is self-funded. The SPD sufficiently complies with the requisite funding feature.

■ As to Plaintiffs argument that the SPD contains a provision purporting to automatically amend the plan but not specifying how or when, the Court is also unconvinced that there is a fact issue. A section of the SPD called "Amendments to the Plan" provides that "[a]ny provision of the Plan which, on its effective date, is in conflict with the requirements of federal statutes or regulations, or applicable state law provisions not otherwise preempted by ERISA (of the jurisdiction in which the Plan is delivered) is hereby amended to conform to the minimum requirements of such statutes and regulations." Dkt. 37–6 at 3. Although Plaintiff challenges this as "curious," arguing that it does not provide how or when this amendment would occur,

Plaintiff does not cite to any authority or state how the two other paragraphs addressing amendments to the SPD fail to satisfy subsection 1102(b)(3). *See id.*

The SPD provides that the Plan Sponsor reserves the right to, at any time, for any or no reason, to change, amend, interpret, modify, withdraw or add benefits, or terminate the Plan, at its sole discretion, without prior notice or approval. Dkt. 37–6 at 3. The SPD also provides that no oral modifications are permitted and that any change, amendment or termination must be written, and is only effective when approved by the body or person granted formal authority by the terms of the Plan. Dkt. 37–6 at 3; Dkt. 37–9 at 6. There is no fact issue that this sufficiently provides procedure for amending the plan and for identifying the person who has authority to amend the plan as is required under 29 U.S.C. § 1102(b)(3). *Curtiss–Wright Corp.,* 514 U.S. at 73, 115 S.Ct. 1223 (holding that plan provision stating that "[t]he Company reserves the right at any time to amend the plan" sets forth an amendment procedure that satisfies ERISA).

Given the precedent and summary judgment record before the Court, the Court finds that the SPD sufficiently sets forth "requisite function features of ERISA plans" established so that the plan is "workable." *Curtiss–Wright Corp.,* 514 U.S. at 82–83, 115 S.Ct. at 1230 (1995). There is no fact issue here as to whether the plan documents for the Alan Ricthey, Inc. Employee Benefit Plan meet the statutory requirements under ERISA.[1]

■ Finally, the Court turns to whether the plan is entitled to a declaration of its ownership interest in the settlement funds and other equitable relief.

The plan contains the following provision:

### *Right to Reimbursement*
The right to reimbursement means that if a third party causes a Sickness or Injury for which you receive a settlement, judgment, or other recovery, you must use those proceeds to fully return to the Plan 100% of any Benefits you received for that Sickness or Injury.

Dkt. 37–6 at 5 (emphasis in original). The plan then contains *"Subrogation and Reimbursement Provisions"* setting forth the Plan's subrogation and reimbursement rights and the covered person's subrogation and reimbursement obligations. *See* Dkt. 37–6 at 5–6 (emphasis in original).

Plaintiff does not dispute that she settled a medical malpractice lawsuit against a third party. *See* Dkt. 39 at 2–3. She also does not dispute that the Alan Ritchey Welfare Benefit Plan paid $71,644.77 of her medical expenses incurred for the injuries cause by the alleged malpractice. *Id.* Further, although Plaintiff disputes whether the SPD constitutes the plan document, Plaintiff does not dispute that the SPD contains the following provisions:

The Plan's subrogation and reimbursement rights apply to full and partial settlements, judgments, or other recoveries paid or payable to you or your representative, no matter how those proceeds are captioned or characterized. Payments include, but are not limited to, economic, non-economic, and punitive damages.

. . .

If you receive payment as part of a settlement or judgment from any third party as a result of a Sickness or Injury, and the Plan alleges some or all of those

---

1. The Court also notes that the SPD contains a section titled "Statement of Employee Retirement Income Security Act of 1974 (ERISA) Rights" containing the model language for the statement of ERISA rights set forth in 29 C.F.R. § 2520.102–3(t). *See* Dkt 37–9 at 6–8.

funds are due and owed to it, you agree to hold those settlement funds in trust, either in a separate bank account in your name or in your attorney's trust funds to the extent of the Benefits the Plan has paid.

. . .

If the Plan incurs attorneys' fees and costs in order to collect third party settlement funds held by you or your representative, the Plan has the right to recover those fees and costs from you.

Dkt. 37–6at 5–6.

Defendants' summary judgment pleadings argue that the Plan is entitled to the imposition of a constructive trust and equitable lien against the settlement funds; a declaration of its ownership interest in the funds; and an order directing Plaintiff and her attorneys to turn over the settlement funds up to the lien amount. *See* Dkt. 36 at 14–17. Plaintiff's summary judgment pleadings do not address the relief Defendants seek.

There being no arguments or authorities cited in opposition by Plaintiff as to the imposition of a constructive trust, the issuance of a turnover order and other equitable relief, and having reviewed the authorities cited by Defendants, the Court finds that the Plan is entitled to the equitable relief requested. *See Sereboff v. Mid Atlantic Medical Servs., Inc.,* 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006); *Bombardier Aerospace Employee Welfare Ben. Plan v. Ferrer, Poirot and Wansbrough,* 354 F.3d 348 (5th Cir.2003), *cert. denied,* 541 U.S. 1072, 124 S.Ct. 2412, 158 L.Ed.2d 981 (2004). "Constructive trusts have been imposed to enforce a plan's equitable lien by agreement on settlement proceeds held by a beneficiary's tort lawyer." *ACS Recovery Servs., Inc. v. Griffin,* 723 F.3d 518, 526 (5th Cir.2013).

Plaintiff had a pre-existing obligation to reimburse the Plan for its payments on her behalf in the event of a third-party recovery. When Plaintiff settled the malpractice suit, an equitable lien by agreement arose for the benefit of the Plan. Plaintiff's right to receive money from the settlement was subordinate to the Plan's lien, and the settlement funds are an identifiable fund to which the Plan's lien attaches. The money belongs in good conscience to the Plan to the extent of the costs it incurred, and under 29 U.S.C. § 1132(a)(3)(B), appropriate equitable relief demands the imposition of a constructive trust on the settlement funds held in trust by Plaintiff's lawyers. *See ACS Recovery Servs., Inc.,* 723 F.3d at 527–28.

Because the Court finds that the SPD is the plan and that Defendants are entitled to reimbursement, Plaintiff is not entitled to attorney's fees. Defendants' counterclaim also seeks an award of attorney's fees to the Plan, but provides no briefing on the issue. There is no fact issue that the SPD allows the Plan recovery of its attorney's fees. Dkt. 37–6 at 6. Within 15 days of this report, Defendants may submit separate briefing as to the amount of attorney's fees requested, if any.

### SUMMARY

After review of the motion, pleadings, and evidence presented, the Court is of the opinion that the ERISA plan at issue is a self-funded plan in compliance with the statute and that the Plan is entitled to a full reimbursement of its lien from Plaintiff's settlement.

The Court agrees with Plaintiff that Defendants' construction of its written ERISA instrument was sloppy and, although not relevant to the Court's determination here, it appears that Defendants have attempted to clean that up.[2] But to

---

2. The Court agrees that Defendants' 2013 Plan Document is irrelevant to its determination of whether the 2011 SPD is an ERISA plan governing the requested reimbursement in this case.

hold that there was no plan at all would not serve equity. If there were no plan, what entitled Plaintiff to the original payment for which Defendants now seek reimbursement? Had Defendants denied payment for the $71,644.77 in medical expenses, arguing that there were no plan, the "Summary Plan Document" would certainly be relevant and would likely be the document Plaintiff would rely on to obtain benefits. Equity works both ways, and the Court will not construe the record here to find the "gotcha" Plaintiff requests. Plaintiff cannot both obtain the benefit of a plan as a covered person and not also comply with her obligations under it as a covered person. Such would be a windfall that is not contemplated or warranted under ERISA.

Defendants' Motion for Summary Judgment (Dkt. 36) should be GRANTED, Plaintiff's Motion for Summary Judgment (Dkt. 39) should be DENIED, Plaintiff should take nothing by her claims, and it should be ORDERED that the Alan Ritchey, Inc., Welfare Benefit Plan is the true and correct owner of the disputed $71,644.77 currently held in trust by Plaintiff via her attorneys; that the Alan Ritchey, Inc., Welfare Benefit Plan is entitled to a constructive trust and equitable lien against these funds; and that Plaintiff and her attorneys shall, within 30 days of this Order, turn over the $71,644.77 to Alan Ritchey, Inc. in its Fiduciary capacity for the Welfare Plan. If any documents are necessary to complete this turnover, Plaintiff and her attorneys should also be ordered to complete such documents within 30 days of the Court's final judgment. Defendants shall also recover their costs. The Court will address the award of any attorney's fees after the parties' briefing on the issue is ripe.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 13th day of February, 2015.**